JUDGE COFER
delivered the orinion oe the court.
The sole question for decision in this case is, whether the chancellor has power to decree the sale of a lease for years held by tenants in common, and which is not susceptible of division.
The statute authorizes real estate held by tenants in common to be partitioned, and if it be not divisible without materially depreciating its value, it may be sold by judgment of the court and the proceeds divided.
But a lease for years is not real, but personal estate. (Sec. 13, chap. 21, General Statutes.)
There is therefore no statutory power to sell a lease for years, and if the court possesses such power it is inherent and independent of statute.
Mr. Story says if one tenant in common takes exclusive possession of a personal chattel, refusing to the other any possession or use thereof, the latter has no remedy whatever by action ,• but he may take the chattel, if he can find it, from him who has done the wrong. (Sec. 414, Story on Partnership.)
Coleman v. Hutchenson (3 Bibb, 209) was a suit in equity by Hutchenson to recover certain slaves. He was adjudged to be the owner of an undivided interest of two thirds in two slaves, the other one third being owned by Coleman.' As the court had possession of the case for the purpose of determining the rights of the parties to an interest in the slaves, and as the slaves ivere indivisible according to the rights of the owners, the circuit court decreed that they be sold and the proceeds divided.
But this court reversed the judgment, holding that it Avas only by statute that the right of partition existed. That the power of the court to decree a sale, when a division could not *376 be made, was not incident to the power to make partition. The court said, "By the statute 31 Henry VIII joint tenants and tenants in common might be compelled to make partition of lands, etc., by writ de partitione faeienda, in like manner and form as coparceners by the common law were.”
"By the common law parceners might be compelled to make partition by the writ de partitione faeienda. And with regard to the manner of making partition, it is laid down that, if the thing be indivisible, one 'may have it for a day, a week, etc., and the other another day, or week, etc. (See Co. Litt., 164 — 5; Bac. Abridgm.) In those authorities it is said, that "if a villein descend to two or more coparceners, this is an- entire inheritance, albeit the villein himself can not be divided, yet the profit of him may be divided; one coparcener may have the service one day, one week, etc., and the other another day or week, etc. And for the same reason a woman shall be endowed of a villein.”
That decision (3 Bibb, 209) was made in 1813, and in 1833 the legislature passed an act empowering the chancery courts to decree the sale of slaves, held by joint tenants or tenants in common when division in kind could not be made (M. & B. 307), and a similar statute continued in force until slavery was abolished. But there never has been any statute of which we have any knowledge, authorizing the sale of any other description of chattel, because it was indivisible between the owners, nor any decision that the chancellor may decree such a sale without statutory authority. It is believed, however, that the power to decree sales under such circumstances has been very often exercised by the courts of this state Avithout their authority to do so being questioned by any one.
The existence of such a poAver must be conceded to be necessary, to prevent injustice and wrong.
In Coleman v. Hutchenson, supra, the court, although it reversed the decree for a sale of the slaves, went on to decide *377 that the circuit court should “have decreed to each party the possession of the slaves, from time to time, according to their resjiective proportions.”
There was no statute authorizing any such decree, and if there was any power to make it, it was a power inherent in the court. Such a decree was no doubt directed on the ground that there was a right in the parties to the enjoyment of the joint property according to their respective interests; and as the law gave the right, but had provided no remedy, it was the duty of the chancellor to supply that defect in' the law by affording a remedy.
But the remedy afforded was inadequate. The chancellor having undertaken to supply a remedy because the law had given none, should have given one commensurate with the exigencies of the case.
In many, if not in a majority of cases in which a necessity for the remedy afforded in that case would arise, it would be little better than no remedy at all.
It seems to us, therefore, that when the chancellor finds a party with a legal right, but without a remedy to enforce it, he should furnish an adequate remedy.
It was for that purpose that courts of equity were instituted. If the chancellor may take charge of a chattel owned by tenants in common, and allow each to enjoy its use according to his interest in it, because there is no other remedy, we are unable to perceive any solid or satisfactory reason why he may not go a step further and do complete justice by selling the chattel and dividing the proceeds.
The argument against his doing so is, that he would thereby deprive some of the co-tenants of their title to the property without their consent. That is true. But in assuming to control the possession and use of the property he deprives those not consenting of dominion over it against their will; and there is at last no difference in principle, but only in *378 degree, between taking control of the property and regulating its use, and ordering its sale and a division of the proceeds.
"We are therefore of the opinion that when a chattel, whether real or personal, is owned by tenants in common and is indivisible in kind, the chancellor may, on the petition of a part of the owners against the others, decree a sale and a division of the proceeds. (Cropster v. Griffith, 2 Bland, 5.)
The judgment of the vice-chancellor conforms to these views, and is affirmed.