## Mattingly's Executor, et al. v. Brents.

(Decided October 29, 1913).

## Appeal from Marion Circuit Court.

1. Landlord and Tenant—Enjoyment of Premises—Refusal of Landlord to Place Lessee in Possession.—The refusal of a former tenant, whose term has expired, to vacate the leased premises does not justify the landlord in refusing to put a subsequent lesee in possession of such premises, in accordance with the terms of the lease.
2. Specific Performance—Parties—Landlord and Tenant—Possession of Premises.—Where a former tenant, whose lease has ex-

pired, refuses to surrender to the subsequent lessee the possession of the leased premises, and such refusal is acquiesced in by the landlord, a proper remedy to the lessee is an action to compel the specific performance of the rental contract, and to such action both landlord and former tenant are necessary parties.

3.  Specific Performance—Landlord and Tenant.—In such action by the lessee for specific performance of the lease and possession of the leased premises against the landlord and former tenant, the plea of the latter that to vacate the premises would result in pecuniary loss to the former tenant constitutes no defense; nor can the former tenant, being a stranger to the rental contract, set up the plea that such contract is in violation of the statute against monopoly.

4.  Specific Performance—Contracts Enforcible—Relief to Plaintiff. —Where a landlord refuses to put his lessee in possession of the leased premises, the provisions of the lease will, at the suit of the lessee, be specifically enforced, although the latter might have maintained an action for damages for breach of the covenants of the lease.

H. W. RIVES for appellants.

W. W. SPALDING for appellee.

Opinion of the Court by Judge Settle—Affirming.

This action was instituted by the appellee, G. N. Brents, to compel the specific performance by the appellant, W. E. O'Sullivan, executor of the will, and trustee of the widow, of W. E. Mattingly, deceased, of the following rental contract or lease:

"This rental contract made and entered into on this 11th day of January, 1912, by and between W. E. O'Sullivan, executor under the will of Dr. W. E. Mattingly, and trustee and agent of Mrs. T. B. Mattingly, of the property hereinafter specified, party of the first part, and George N. Brents, party of the second part, Witnesseth,

"That the said party of the first part has this day rented to the party of the second part, for the period hereinafter specified, the livery stable and all appurtenances thereto located on the north side of Main street, between Proctor Knott avenue and Depot street, in Lebanon, Marion County, being all of the same property now occupied by Harry L. Brown, so that the said party of the second part shall obtain possession and use of all of said property that is now in the possession of said Brown.

The term of this lease is one year from the date of the beginning of this lease, as hereinafter specified, with the privilege or option on the part of said Brents to renew the contract for another year on the same terms, provided, only, that Mrs. T. B. Mattingly shall continue to live during the first year covered by this lease. Should said Mrs. T. B. Mattingly die within one year after this lease begins as hereinafter provided, the said party of the first part shall have the right to terminate this lease at the expiration of the first year.

The date of the beginning of this lease is fixed as follows: The said property is now held by Harry L. Brown under a lease which expires on July 1, 1912. Should said Brown elect to occupy said premises until the expiration of said lease, he shall have the right to do so and said Brents shall not obtain possession of said property, nor shall this lease begin until the expiration of said lease in favor of Harry L. Brown. But should said Harry L. Brown himself, or through any agent or representative, make a sale of his livery business and property used in connection with said livery business, with the result that said Harry L. Brown does not become the purchaser of said business and the property connected with said business, and shall vacate said premises then the said Brents shall have the right to possession of all said premises on the first day of the following month after such sale shall be made and the premises vacated as above provided.

"The consideration of this contract is that said Brents shall pay to the party of the first part rent at the rate of $33.33 per month, payable in advance for the succeeding month on the first day of each month.

"Should the said building be destroyed by fire or any other act of nature or of God, then this contract shall be at an end. But in this event, the said party of the first part shall refund to the party of the second part the proportionate part of the rent paid for the portion of the month during which the property is not used by said Brents on account of said destruction.

The said Brents shall take all reasonable care of said premises and shall return same to the party of the first part at the expiration of this contract in as good condition as when received, natural wear and tear excepted, and the said party of the first part shall be under no duty to make necessary, reasonable repairs during the life of this contract.

"In testimony whereof, the parties hereto have subscribed their names to this contract in duplicate on the day and year aforesaid.

(Signed) "W. E. O'Sullivan, Exor, and

"Trustee, G. N. Brents.

It is admitted by the parties that, when the above contract was entered into, it was supposed that the lease which Harry L. Brown held upon the property therein mentioned would expire July 1, 1912, but later it was discovered that it did not, in fact, expire until October 15, 1912; and it is further admitted that, by the terms of the contract between appellee and the appellant, O'Sullivan, executor and trustee, that appellee's lease of the property would begin October 15, 1912, and that he was entitled to the possession of same as of that date.

The petition, after setting out the provisions of the rental contract or lease, alleged that possession of the leased premises was demanded of the appellant, O'Sullivan, by appellee on the 15th day of October, 1912, but that appellant refused to give him possession of the property, upon the ground that the previous lessee, Harry L. Brown, was still in the possession thereof and refused to surrender same. Harry L. Brown, because of his retention of the possession of the property and refusal to abandon same at the expiration of his lease, was made a party defendant to the action, as was Mrs. T. B. Mattingly, the appellant, O'Sullivan's, *cestui que trust*; and it was further alleged in the petition that the several defendants named, "illegally and without right, and in defiance of plaintiff's rights under said contract, have entered into an agreement between themselves that they will withhold possession of said property from plaintiff, although they concede that plaintiff is entitled to the possession of said property under his said lease." It was also alleged in the petition that, by reason of the lease in question, appellee bought two automobiles, five vehicles, sufficient harness and other equipment to enable him to conduct a first class livery stable on the leased premises; that he also employed labor for the same purpose and made other necessary preparations; and that by reason of the failure and refusal of the appellant, O'Sullivan, to give him possession of the leased premises on the 15th of October, 1912,

as provided by the contract between them, appellee was damaged in the amount claimed in the petition. The prayer of the petition asked judgment against the several defendants for such damages, for the specific performance, in every particular, of the provisions of the lease, and immediate possession of the leased premises.

The appellants, O'Sullivan and Brown, filed separate answers to the petition, neither of which controverted the averments of the petition, except as to the claim of damages asserted by appellee. The answer of the appellant, O'Sullivan attempts to excuse his failure to comply with the rental contract made with appellee, by stating that his violation thereof was caused by Brown's failure to surrender the property after the expiration of his lease thereon, and that it would have involved Brown in financial loss to have required him to vacate the premises.

The answer of the appellant, Brown, attempts to excuse his continued possession of the· leased premises after the expiration of his term, upon the ground that he had been unable to rent other property suitable for the livery business; that it would result in financial loss to him and force him out of the livery business if he were compelled to surrender this property; and that as appellee already owned and was conducting a livery stable in Lebanon, his object in leasing this property was to destroy competition and secure a monopoly of the livery business in that city. Appellee filed a demurrer to each of the answers, which the circuit court sustained and appellants failing to plead further, judgment was rendered for the specific performance of the contract and the immediate delivery of the possession of the property to appellee. The court, however, reserved its decision as to the matters of damage claimed in the petition, and that question was left open for future adjudication. Appellants complain of the judgment rendered and, by this appeal, seek its reversal.

Each of the answers was clearly demurrable. Neither denied the provisions of the lease, as expressed therein or as alleged in the petition; nor did either make any claim of fraud or mistake in the procurement or execution of the lease, or allege any legal cause for the failure of the lessor to comply with its terms. It cannot be urged by the appellant, O'Sullivan, as a defense to the cause of action set out in the petition, that he is

excused for violating the provisions of the lease sought to be enforced, because the former tenant of the leased premises, Brown, holding over by mere sufferance on his part, has refused to vacate the same. Nor does the fact that Brown, the former tenant, would be subjected to pecuniary loss by the surrender of the leased premises, give any support to such a defense. The rule that excludes this defense is thus stated in 24 Cyc., 1053:

"Where the lessee is prevented from obtaining possession of the demised premises by a former tenant whose tenancy has expired, the general rule is that he may bring an action of ejectment to recover possession of the premises, and in such action the lessor is not a necessary party. Likewise a lessee may bring an action of forcible entry and detainer against a tenant remaining in possession after the expiration of his lease. * * *

"Upon the expiration of a lease, it is the tenant's duty to surrender possession, although no demand therefor is made; and this is true even where the lease provides that improvements put on the premises by the tenant shall be paid for by the lessor."

In this State, however, a writ of forcible entry and detainer is allowed to the landlord, only. So, the remedy here is that to which appellee has resorted. The proceedings being in the nature of an action in ejectment against Brown, the former tenant, and as to the landlord, O'Sullivan, through whose acquiesence Brown has refused to deliver possession of the property, an action of equitable cognizance for the specific performance of the provisions of the lease; both being necessary parties to the action.

A lease is but a conveyance of an estate in realty.

It divests the owner, for a given time, of a certain estate in the realty, leaving in him the reversion. In a sense, therefore, the lessee is as much the owner of the right of possession of the leased premises as the grantee in a deed is the owner of the freehold, and in either case it is the duty of the grantor to place the grantee in possession of the property. It is not denied by the appellant, O'Sullivan, that by the terms of the lease in question he conveyed to appellee his right of possession of the property in controversy, for the term specified in the lease; nor is it claimed that the lessor could not have required the appellant, Brown, to vacate the leased premises, either by the summary remedy of a forcible detainer proceeding or by an action in ejectment; and

what the lessor as landlord might thus have done voluntarily in obtaining a delivery to the lessee of the possession of the property, he can by an action in equity, as here attempted, to which he and the former tenant are made parties, be compelled to do in furtherance of the obligation imposed upon him by the terms of the lease.

There is no equity in the claim of appellants that the expulsion of the appellant, Brown, from the leased premises would put him out of business, or subject him to pecuniary loss. Could the appellant, O'Sullivan, had he been using the leased premises in the livery business, have avoided the duty, imposed by the lease, of surrendering to appellee the property as required by its covenants, on the ground that to do so would result in pecuniary loss to him? Obviously, such an excuse would not be received, and if such a defense would not have been allowed him, also unavailing must it be to the appellant, Brown, who is a mere trespasser as to appellee.

Equally without merit do we regard the claim set up in the answer of the appellant, Brown, that the object with which appellee leased the livery stable in controversy, was to secure a monopoly of the livery business. In the form alleged, this allegation is a mere conclusion of the pleader. It does not allege that the acquisition of this stable by appellee would, in fact, give him the control of the livery business in the city of Lebanon, or that it would result in his unreasonably increasing the charges for livery service, or would put him in a position to do so. But, if the averments of the answer referred to could be given the meaning claimed for them by counsel for appellants, by what rule of law or equity can they be held to affect the validity of the contract here sought to be enforced, when relied on by the appellant, Brown, a stranger to the contract and admittedly without right to the possession of the property involved?

The lease being in the usual form, its provisions unobjectionable in character, and the procurement and execution of the instrument admittedly free of fraud or mistake, no error was committed by the circuit court in adjudging its specific performance. As previously stated, the answers of appellants present no meritorious grounds upon which its performance could have been refused. In addition to the reasons, authorizing its enforcement, we have mentioned, another important

equity in appellee's favor is the fact that he, on the faith of its being performed by the lessor, expended considerable sums of money in purchasing vehicles and other equipment for conducting a livery business upon the leased premises.

It is, however, insisted for appellants that the right to specific performance is not an absolute right, but one resting in the sound discretion of the court. This is true, but as stated in Edelin v. Samuels, 126 Ky., 303, "While the remedy of specific performance is generally spoken of as resting in the discretion or grace of the chancellor, this is more a form of expression than an accurate definition of the rights of the injured party as to his remedy by specific performance. In other words, while the chancellor has a discretion it is not an arbitrary but a legal discretion."

Again, speaking on this subject in Posey v. Kimsoy, 146 Ky., 217, we, in part, said, "But the discretion recognized to exist in the cases and authorities generally is not an arbitrary or capricious one, but a sound judicial discretion controlled by established equitable principles. There is no more reason why a valid executory contract should not be enforced than there is why any other valid contract should not be enforced; and when the courts have refused to specifically enforce contracts, it has been because the contract was inequitable or for some other substantial reason such a contract as should not be executed."

In Pomeroy's Equity, section 1404, the rule is thus stated, "Where, however, the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance, as for a court of law to award a judgment of damages for its breach. This is the ordinary language of judges and text-writers."

Fledge v. C. & O. Ry. Co., 122 Ky., 354; Schimdt v. L. & N. R. R. Co., 19 Rep., 666; L. & N. R. R. Co., v. Zering, 9 Rep., 107; Farrady C. & C. Co. v. Owens, 26 Rep., 243.

It is manifest that the enforcement of the contract in this case will not result in hardship to either of the contracting parties, who were the appellee and the appellant, O'Sullivan, and there can be no doubt that the lease, to which they are parties, belongs to the class of

contracts that may be specifically enforced. It is not material, therefore, that appellee might have maintained an action for damages against the appellant, O'Sullivan, as executor and trustee, for the latter's breach of the contract; he has but exercised the right of election given him by the law in claiming specific performance of the contract.

36 Cyc., 552 and 554, in pointing out what contracts may or may not be specifically enforced, declares, "Among the contracts enforced besides ordinary contracts for sale and purchase of the fee are those for the sale or grant of easements, as a right of way or the right to work minerals in the land; sale of trees growing on a certain tract of land, or the undivided moiety of a tenant in common, of an equitable interest, of a right of pre-emption, of an expectancy; and it seems of a mere possessory interest. Agreements to give or renew a lease are of frequent enforcement. And a contract to assign the good will of a lease, that is, the reasonable expectation of its renewal, has been enforced. An agreement for the digging of stone will be specifically enforced, whether it be a mere license to dig or a lease. Where a deed contains a building line restriction, based on a valuable consideration, and intended to be for the benefit of the premises and owners of the neighboring land and the subsequent owners thereof, the restriction is a right in the nature of an easement, and is the proper subject of specific performance."

In view of the foregoing authorities, appellee was clearly entitled to the application of the remedy invoked by him in this case. Indeed, in no other way could he have obtained adequate relief. It, therefore, follows that the judgment of the circuit court properly determined the rights of the parties, for which reason it is affirmed.