## Purcell v. City of Lexington, on Relation, Etc.

(Decided November 14, 1919.)

### Appeal from Fayette Circuit Court.

1. Municipal Corporations—Action to Assess Omitted Property—Parties.—Under section 3187 Kentucky Statutes a city of the second class may authorize an action to be brought in its name to assess omitted property for taxation and recover the taxes due thereon by its city solicitor, city attorney or other duly authorized agent, and a petition in the name of the city "on relation of" a back tax assessor, duly appointed for such purpose, is not defective as to the party plaintiff because not instituted and prose-

cuted by the city solicitor whose duty it is under another sec-
tion of the charter of cities of this class, 3166, to appear for the
city and attend to all cases wherein the city is a party.

2.    Taxation—Leasehold Liable to Taxation.—A leasehold for 99 years
with privilege of renewal in perpetuity is property and has such
independent market value that it is taxable against the lessee
although technically a chattel real and personal property gen-
erally, whatever its proper classification for purposes of taxa-
tion, since it is not such an inferior interest in land as by sec-
tion 4049 is directed to be listed for taxation as part of and
against the owner of the first freehold estate therein, which sec-
tion is merely an arrangement for convenience of the state and
owners of successive interests in land and not a provision of ex-
emption.

3.    Taxation—Exemption of Leasehold From Contract to Exempt.—
A contract executed in 1839, by which the city of Lexington de-
mised certain city lots owned by it for 99 years and thereafter in
perpetuity in consideration of a yearly rental, contained a pro-
vision exempting the leasehold from payment of city taxes, which
is held to be in violation of the first section of the Bill of Rights in
the state's second constitution then in force, and invalid, because
the consideration therefor is not separately stated in the con-
tract and therein made to appear to be reasonably adequate and
for a term not unreasonably long.

GEORGE C. WEBB and HUNT & BUSH for appellants.

H. E. ROSS and MILLER & MILLER for appellee.

Opinion of the Court by Judge Clarke—Affirming.

The appellants are the present owners of the interest
which the city of Lexington, as the fee simple owner of
four lots on Main and Water streets in the city of Lex-
ington, demised in 1839 to Thomas K. Layton and
Michael Gaugh by four separate leases which are identi-
cal in terms, and one of which, omitting the description
of the property leased and certificates of acknowledg-
ment and recordation, is as follows:

"This indenture made and entered into this 13th day
of February, 1839, between the city of Lexington, of the
one part, and Thomas K. Layton, of the said city, of
the other part,

"Witnesseth: That, in consideration of the rents,
covenants and conditions on the part of said Layton to
be paid, kept and performed, as hereinafter mentioned
the said city of Lexington hath demised and to farm let

unto the said Layton, his executors, administrators and assigns, all that lot or parcel of land situated on Water street in the city of Lexington, and bounded as follows:

"(Description) . . . .

"To have and to hold said parcel of ground to the said Layton, his executors, administrators and assigns, for and during the full end and term of ninety-nine years from the 18th day of March, 1838, and the said city of Lexington doth hereby covenant that at the expiration of said term of ninety-nine years it will cause to be executed another demise of said premises for the same term and containing the same covenants, clauses, conditions and rents as this indenture, and it is understood by the parties aforesaid, that this is a clause of perpetual renewal, and it is their intention so to make it, and the said city of Lexington doth further covenant and agree that she will keep him, the said Layton, his executors, administrators and assigns, in the full and complete use, occupation and enjoyment of said demised premises during the term aforesaid, free of all let or hindrance interruption or disturbance whatsoever, in consideration of which demise and the foregoing covenants by the said city, the said Layton doth covenant and agree that he and his executors, administrators and assigns, shall well and truly pay to said city of Lexington, her assigns, the annual sum of $35.83, to become due in equal semi-annual installments, computing the time from the 18th day of March, 1838, being the rent reserved and payable and issuing out of the ground demised as aforesaid, and upon the said rent or any part thereof becoming due and being in arrear, the said city of Lexington, by her collector or assigns shall have the right to distrain, sue for and recover the same without delay, and said rent or any part thereof remaining in arrear and unpaid for the space of twelve months, from the time it shall become due, then it shall be in the election of the said city of Lexington, or its assigns to recover the same either by distress and suit, or to re-enter upon said demised premises, and upon such re-entry this lease shall become and be utterly null and void, and the premises with the buildings and improvements and appurtenances shall vest in said city of Lexington forever, and its assigns, and the said Layton is to perform and keep his article of agreement entered into on the 13th day of February,

1838, in the name and firm of T. K. Layton & Co. and in conjunction with B. Ford, M. Gaugh and R. King, with said city of Lexington, and to perform its conditions and convenants. Said article of agreement is of record in the Record Books of the city council of Lexington. It is further covenanted and agreed that said Layton is to keep an insurance upon the premises and this lease and the buildings thereon, and the same shall be exempt from city taxation for the term aforesaid.

"In testimony whereof the said city of Lexington hath caused the name and signature of the mayor of said city with the public seal of said city to be hereunto affixed, and the said Layton has hereunto set his hand and seal the day and year first above written.

"CHARLES H. WICKLIFFE, MAYOR.
"T. K. LAYTON."

The lessees, since the execution of the leases, have been in possession of the premises and paid the rentals, &c., as stipulated, and the city of Lexington never at any time prior to the filing of this suit, on July 20, 1916, collected any taxes or asserted the right so to do against the original lessees or any of the several successive assignees. In this action styled and prosecuted in the name of "The City of Lexington, on relation of Thomas E. Coyne, back tax assessor, plaintiff, v. J. D. Purcell, J. D. Purcell Company, a corporation, and Security Trust Company of Lexington, Kentucky, a corporation, defendants," it was sought to have the value of the leasehold assessed against the lessees for taxation by the city for the five years preceding the filing of the suit, and to recover judgment for the taxes due thereon, with interest, penalty and costs, and from a judgment granting plaintiff the relief prayed for, the defendants have prosecuted this appeal.

1. It is first insisted that the court erred in overruling a special demurrer to the petition upon the ground that under the charter of cities of the second class, to which Lexington belongs, all actions for and on behalf of the city must be prosecuted by the city solicitor; that there is no such officer as "back tax assessor" recognized by the charter, and that even if the council had authority to appoint such an officer, he is yet without authority to institute or prosecute an action in the name

of the city. It is true that the charter does not in terms provide for such an officer as back tax assessor, and that in section 3166 of the Kentucky Statutes, a part of the charter of cities of the second class, it is provided that the city solicitor, in addition to other specified duties, "shall appear for the city and attend to all cases in the circuit court and Court of Appeals wherein the city may be a party complainant or defendant or a party in interest." But this section only defines the duties of the solicitor and does not limit the powers of the city with reference either to the institution of actions or the employment of counsel, certainly not with reference to the assessment of omitted property and the collection of delinquent taxes, since in another section of the charter, being section 3187, Kentucky Statutes, is the provision among others that "where any property subject to taxation has been omitted from assessment for any year or years, the city may, by direct action, brought in the name of the city by its city solicitor, city attorney or *other duly authorized agent,* in any court otherwise competent for the purpose, recover judgment against the person liable for the payment of taxes on such property." As the petition alleges that the relator prosecuting this action was duly appointed back tax assessor for the city of Lexington and authorized "to discover and report for assessment all property subject to taxation in the city of Lexington which has been omitted from the assessment for any year or years and to maintain and prosecute suits in the name of the city of Lexington for the collection of taxes on property in the city of Lexington omitted from assessment for any year or years," we think it is clear that the court did not err in overruling the special demurrer to the petition.

2. Upon the merits, the principal question is whether the provision in the leases exempting the demised property from city taxes was a valid and binding obligation upon the city under the laws of the state at the time of the execution of the leases, but before undertaking a decision of that question it will be necessary to determine whether or not defendants' leasehold interest in the demised premises is such an interest as would be taxable against them under the present law even if there were no exemption clause in the leases, since the defendants earnestly insist that such interest as they have in

the property, although personal property, is taxable under existing laws only as real estate against the lessor. This contention is based upon sections 458, 4022 and 4049 of our present statutes and the rule almost if not universally recognized as stated in 24 Cyc. 1074, that:

"In the absence of agreement or special covenant, the duty to pay all state, municipal, and county taxes and assessments which during the term of the lease become chargeable upon the premises is imposed by law upon the landlord." This is a correct statement of the general rule, and as such accords with the provisions of the above sections of our statutes, which, insofar as applicable, are respectively as follows:

Section 458—"The words 'real estate' or 'land' shall be construed to mean lands, tenements and hereditaments, and all rights thereto and interests therein other than a chattel interest."

Section 4022—"For the purpose of taxation, real estate shall include all lands within this state and improvements thereon; and personal estate shall include every other species and character of property—that which is tangible as well as that which is intangible."

Section 4049—"Real estate, or any interest therein, shall be listed in the county or district where situated against the owner of the first freehold estate therein."

Section 458, *supra,* is a part of chapter 26 of the statutes, dealing with and announcing rules for "construction of statutes," and is of general application where rules of construction are necessary to a correct interpretation of the language of a statute, but not applicable where the statute by its terms provides otherwise. Applying this general rule of construction, this court in Prather v. Davis, 13 Bush 372, Combs Lumber Co. v. Chinn, 90 S. W. 251, and Hampton v. Glass, 116 S. W. 243, held that a lease for years is not real but personal estate, and in Wilgus v. Commonwealth, 9 Bush 556, it was decided that a leasehold under a contract almost if not identical with the one involved, was a chattel real. And so it is both at common law and under section 458 of our statutes, and probably also under section 4022; but, even so, the legislature by section 4049, *supra,* has provided specially that *any interest* in real estate shall be listed against the owner of the first freehold estate therein. If these were the

only provisions of the law to be considered, we would have to decide, as contended by appellant, that, although the leasehold is technically a chattel, it is not taxable as such against the owner thereof, but rather as real estate against the owner of the first freehold estate in the land, who, to avoid the necessity of splitting up real estate into lesser than freehold interests for purposes of taxation, is required in one assessment to cover and include all such lesser interests. This was done, no doubt, upon the theory that the owner of the freehold interest may still be considered, for taxation purposes, the beneficial owner of the whole, including the lesser chattel interest demised to others, on account of the rentals received by him therefor.

Ordinarily this is true, and the arrangement that the owner of the land shall pay all taxes against same or any lesser interest therein owned by his lessees, works out satisfactorily and fairly to the state and all parties as a general rule. But neither these sections, which merely classify property, nor section 4049, which simply determines which of the owners of successive interests therein shall be liable ordinarily for taxes upon the whole, can be construed to mean that the owner of a chattel, or any interest in real property, if of value, is to be exempted from the payment of all taxes thereon, regardless of whether the owner of the freehold estate therein pays taxes on the whole as contemplated, because to so construe it would bring it within the inhibition of section 170 of the Constitution against any exemption in favor of property such as this, as well as in violation of section 4030 of the statutes, which declares that all personal and real estate within this state shall be subject to taxation and assessed at its fair cash value at a voluntary sale, and section 4050, providing that "personal property of every kind shall be separately stated and valued in the appropriate column of the tax book herein provided for, and if there be no appropriate column it shall be valued and stated in the column headed 'miscellany.' "

We are therefore quite clear that section 4049 does not exempt from taxation a leasehold interest in land, but merely excuses and could excuse the owner thereof from listing it separately for taxation only when in fact, as is usually the case, its value is an inseparable part

of and included in the ordinarily larger interest remaining in the owner of the freehold estate. That this is so is also apparent from section 4033 of the statutes providing that "whenever the occupant or tenant of any land. . . . shall pay the taxes thereon, which the owner ought to pay, the person paying the tax shall be entitled to recover of the owner the amount of the tax so paid and interest," which clearly implies that the occupant or tenant may in order to protect his possession be required to pay the taxes on the land which the owner ought to have paid; and that neither the state nor any subdivision thereof can be forced to lose any taxes due on the land or any taxable interest therein because of any inability, however arising, to collect same from the owner of the first freehold estate therein.

Hence defendants are liable under present laws for all taxes on their leasehold, since it is unquestionably property having a separate and independent cash value that can be estimated "at the price it would bring at a fair voluntary sale," even if, as between themselves, the taxes ought to have been paid under section 4049 by the lessor. But if the taxes ought to have been paid by the lessor, defendants can, if required to pay same, under section 4033 of the statutes, recover the amount thereof and interest from the lessor. So the real question upon which their liability to plaintiff, who is also their lessor, depends, (aside from the attempted exemption in the lease), is whether it was primarily the city's duty as owner of the first freehold estate in the land, to have assessed it and paid taxes to itself thereon. We think not, because this grant to appellants, though technically a lease, demises to them every beneficial interest in the land in perpetuity, and retains only a technical fee, with a small annual rental exacted, which we assume was adequate as rental, but only as such, when the contract was made. But this rental was then, as it is now, merely nominal, or no consideration whatever for the privilege bestowed upon the lessees by the perpetuity clause, of being the beneficiaries of the natural increase in the value not only of the leasehold but in the fee as well.

This is not such a lesser interest in land as was con-

templated by section 4049 should be listed by the owner of the first freehold estate and included in the taxes paid by him because it is a much larger and more valuable interest than any technical freehold interest left therein, and because of this perpetuity clause, which makes the lessee rather than the lessor the custodian and principal beneficiary of the fee itself, is not within the general rule of taxing leases as part of the real estate, but an exception thereto, much the same as is an oil or gas lease, and for the same or like reasons independently taxable against its owner rather than the owner of the fee.   This court in Mt. Sterling Oil & Gas Co. v. Ratliff, Sheriff, 127 Ky. 1, Wolfe Co. v. Beckett, &c., 127 Ky. 252, and Raydure v. Board of Supervisors, 183 Ky. 84, has recognized the power of taxing authorities, notwithstanding the provisions of section 4049, to assess against and collect from the lessee taxes on the value of oil and gas leaseholds, not as assumed by counsel for defendants under section 4039 of the statutes, which does not confer such power, as was pointed out in the Raydure case, *supra,* but upon the broad ground that they are property different from ordinary leases, having taxable values of their own, independent of and not included within the value of the real estate assessable against the owner.

We are, therefore, clearly of the opinion that under our present laws this leasehold is taxable against the lessees, upon the same broad principles as are oil and gas leases, because of the perpetuity clause in the lease, which gives to it a peculiar and unusual value independent of and not beneficially included in the freehold interest remaining in the lessor; that it is quite immaterial, and we do not decide, whether the leasehold is to be considered as personalty or realty for taxation purposes, since both are taxable in exactly the same way and to the same extent, or were during the years involved in this action; and that municipal ownership of the retained technical fee and consequent failure to pay city taxes thereon, does not affect the lessees' independent liability for taxes on their interest in the property.

The several courts in the following cases, though upon somewhat different facts in each case as pointed

out by counsel for defendants, and not always in the same way, have nevertheless arrived at practically the same conclusions, and held the owners of leases in perpetuity liable for taxes thereon despite the general rule as stated in Cyc. *supra*, and statutes similar in effect to ours: Ocean Grove Camp Meeting Association v. Reeves, 79 N. J. 334; Wells v. Mayor and others of the city of Savannah, 87 Ga. 397; Penick, &c. v. Atkinson, &c., 77 S. E. 1055, 46 L. R. A. (N. S.) 167, 220 U. S. 472; LaSalle County Mfg. Co. v. Ottawa, 16 Ill. 418; Garland County v. Gaines, 56 Ark. 227; Street v. City of Columbus, 75 Miss. 822; Moeller v. Gormley, 44 Wash. 465.

Hence we conclude that the defendants were primarily liable for all taxes on their interest in this property, and to the city for the taxes sued for in this action unless the exemption in the lease is a valid stipulation and protects them.

3. Counsel for defendants practically concede that the exemption clause in the contract would be invalid under our present constitution, but insist that it was valid when made and therefore still binding upon the city. Lexington was created a town in 1782 by an act of the Virginia legislature, which provided that its affairs were to be managed by trustees, who were empowered to hold the real estate upon which the town was located for the benefit of the town and its inhabitants, and were empowered to sell and convey same. In 1831, by act of the Kentucky legislature, the city of Lexington was incorporated, and the management of its affairs vested in a mayor and board of council, with all of the power theretofore vested in the trustees, and among additional powers the following:

"The said mayor and councilmen shall have the power and authority to assess, levy and collect taxes upon such real estate and personal property as they may designate."

In January, 1835, the charter of the city was amended, the mayor and council authorized to raise a limited amount of money by the sale of script of the city, and in order to provide for payment of same to set aside and appropriate the rents of all city property, including the houses that might be erected thereon. So it is clear that the city, when it executed this contract, being the owner in fee simple of the property, had full power and au-

thority to execute the leases involved, and it is insisted by counsel for defendant that since there was no provision in the constitution then in force in this state, such as sections 170 and 172 of our present constitution, enjoining equality of taxation and forbidding exemptions, or any mention whatever of taxes in the entire constitution, that there was nothing to prevent the city from exempting its lessees from the payment of city taxes. In fact, it is urged that the provision quoted above from the act of the legislature of 1831 incorporating the city, expressly gave to the city council and mayor the power to designate the real estate and personal property that should bear the burden of taxation.

Without attempting to construe what this provision of the charter meant, but assuming for present purposes the legislature attempted thereby to confer upon the governing authorities of the city of Lexington power to designate some and thereby exempt other property from taxation, which it surely did not mean, we are certain that the legislature did not itself have such unusual powers and could not therefore confer them. In the second constitution of this state, then in force, the first section of the Bill of Rights declared "that all freemen, when they form a social compact, are equal, and that no man or set of men are entitled to exclusive public emolument or privileges from the community but in consideration of public services." Surely we need not at this late date cite authorities, as we shall however later do, in proof of the protection this provision afforded citizens of the Commonwealth and every subdivision thereof against the burdens of taxation being made unfair or unequal by grant from the community to any man or set of men of exclusive privileges.

That the lots owned by the city of Lexington prior to 1839 or since were not subjected to city taxation was not due to any inability on the part of the city in its governmental capacity to levy taxes upon properties owned by it in a private capacity nor because of any power supposed to have been vested in the mayor and council, of designating property that should be taxed, but was simply because, though taxable, it made no difference to other property owners, and all of them, in the city whether the lots owned by the city were taxed or not, since if taxed for the city, the city, out of revenues

received from other properties, had to pay same and the burden remained in either event upon the owners of other property. But this immunity was immaterial only so long and to the extent that the city's ownership was retained; and the city in disposing of or leasing its property, for a valuable consideration, as it had the right to do, could not, in addition, throw in as good measure or as a gratuity, and exemption from taxation to its grantees or lessees.

That cities must keep their valid contracts as well as others is fully recognized by all courts, so we find in the decisions from this court, as well as others, an effort in considering all such contracts as this, to determine whether an attempted exemption was or not a part of the consideration received by the city, or whether it was, in fact, a mere gratuity thrown in, as it were, for good measure. And this court at least has upheld such an attempted exemption from taxation as a part of an otherwise valid contract only where it is for a reasonable term and there is a reasonably adequate consideration to the city therefor, and this is made clearly to appear from the contract itself by a provision that in the event the city thereafter should collect of the grantee city taxes the city will refund a like amount. Otherwise an attempted exemption must be considered merely a gratuity and not a part of the consideration, and therefore not binding upon the city.

In Board of Councilmen of the City of Frankfort v. Capital Gas & Electric Company, 16 Ky. L. R. 780, 29 S. W. 855, a provision in a contract of sale by the city of its gas plant to the appellee that same "shall from and after the execution of this contract be exempt from the payment of all city taxes to the city of Frankfort, and if it be determined that the party of the first part has not the power to make such exemption from city taxation, then any and all sums which the second party and its assigns shall have to pay for said taxes from second party herein attempted to be exempted, shall be added to the sum herein stipulated to be paid for lighting the streets of the city of the first part" was held a valid stipulation, but only because, as said by the court, "it is manifest that these parties when entering into the contract, regarded this exemption as forming a part of the consideration, and may have known or

believed that the city had no power to make the exemption, and for that reason inserted the clause by which the city was to sustain the loss by adding to the cost of lighting the streets the amount of taxes required to be paid. . . . Exemption from taxation is held invalid because it increases the taxes on property not exempt, but here, if the city is required to reimburse the appellee, the burden remains the same, for if the taxes are collected from the appellee the city must pay them back.''

In the City of Dayton v. Bellevue Water and Fuel Gas Light Company, 119 Ky. 714, a clause in the contract by which the city agreed to pay an annual rental of $45.00 for each of sixteen fire hydrants to be erected, and provided also that the property used in the construction of the water works system should be exempt from all city taxes for a period of twenty-five years, was held to be invalid. In discussing the case of City of Frankfort v. Capital Gas & Electric Light Co., *supra,* the court said: ''The facts in that case were peculiar and distinguished from those in the case at bar. There the contract expressly provided that the exemption was in part consideration for lighting the streets of the city, and it was further stipulated, in the event the exemption was found to be invalid, that all sums the company was required to pay for taxes should be added to the sum stipulated to be paid for lighting the streets. This court is not disposed to carry the doctrine announced in that case any further, especially as it seems to us to be in conflict with the universal trend of modern authorities on this subject, and the provisions of our present constitution.''

In City of Winchester v. Winchester Water Works, 149 Ky. 177, the court held that a provision in a contract of sale by the city of its water works, by which the water company agreed to furnish each year an amount of water for certain municipal purposes equal in value to the amount of taxes that might be assessed against its property was not an exemption from taxation and was a valid stipulation, but in the course of the opinion the court cited many authorities, including Maine Water Company v. Waterville, 93 Me. 586, 49 L. R. A. 294, and Carterville I. G. & W. Co. v. Carterville, 89 Ga. 683, to show that any such stipulation, to be

valid, must not be intended merely to keep within the semblance of validity an illegal attempt to exempt property from taxation without a fair return therefor, but must be made in good faith for a reasonably adequate consideration and for a term of years not unreasonably long.

These same principles were but recently reaffirmed in Walker v. City of Richmond, 173 Ky. 266, upon an exhaustive reconsideration of the whole question.

It is true the contracts in those cases were executed under our third constitution while in the case at bar the second constitution was in force when the contract was executed, but the first section of the Bill of Rights was identical in each and a sufficient guaranty that all taxation should be uniform and equal. Barbour, &c. v. Board of Trade, 82 Ky. 645; Lancaster v. Clayton, 86 Ky. 373; Commonwealth v. Mackibben, 90 Ky. 384; Clark v. Louisville Water Co., 90 Ky. 519; Whiting v. West Point, 15 L. R. A. 860.

In the case at bar the contract does not show that the exemption was granted for a reasonably adequate consideration even in 1839. It was granted in perpetuity and certainly without any consideration whatever now when the taxes on the value of the leasehold exceed the entire rentals defendants are paying therefor; hence it is invalid.

It therefore results that defendants are liable for the taxes as adjudged, and the judgment is affirmed, but the order of sale should be so modified as to make it clear only defendants' leasehold interest in the lots is to be sold to satisfy the judgment.