## Illinois Cent. R. Co. et al. v. City of Louisville et al.

(Decided May 16, 1933.)

220

TRABUE, DOOLAN, HELM & HELM for appellants.

DAVIS W. EDWARDS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Illinois Central Railroad Company and its lessor, the Chicago, St. Louis & New Orleans Railroad Company, filed an action in 1929, and also in 1930, against the city of Louisville, the tax receiver of the city and city attorney, to enjoin the collection of taxes the city claimed were due for these years from the railroad companies upon certain real estate owned by the city of Louisville, and leased by it to the one, and subleased by it to the other, railroad company. The actions were consolidated. They are now here on the record in the consolidated cases. The city of Louisville owns certain real estate within the corporate limits of the city. It is held by the city for possible future use for wharf purposes. It is described in the petition as follows:

"No. 1. The lots or parcels of land beginning at the northwest corner of Monroe and 11th streets, thence running northwardly with the west line of 11th street 488 feet more or less to the south line of the Louisville & Portland canal; thence with the south line of said canal, north 60 degrees 20' west 781 feet; thence south 34 degrees 27' west 100 feet; thence south 55 degrees 31' west 388 feet to the east line of 12th street 187 feet; thence south 86 degrees 42' east 200 feet to the west line of a 20 foot alley; thence with the west line of said alley south 3 degrees 18' west 350 feet to the north line of Monroe street; thence long the north line of Monroe street south 86 degrees 42' and 220 feet to the beginning.

"No. 2. A parcel of land beginning on the north side of Monroe or Rowan street between 10th and 12th streets, having a front on Monroe or Rowan street of 30 feet and running northwardly of that width to the line of the Louisville and Portland Canal, the western line of said parcel of land

corresponding with what was heretofore the western line of 11th street.''

The lots were leased by the city of Louisville to the railroad company for an agreed consideration to be paid, annually, for a period of 99 years, with the provisions that, at the end of every period of 20 years, during the life of the lease, they should be revalued and the rate of interest then prevailing on real estate in the city of Louisville, determine the valuation of the land to be made without taking into consideration the value of the improvements. It was provided in the lease that, if the city or its board and the railroad company could not agree on the valuation of the land and the rate of interest at the time of the revaluation, then both the valuation and the rate of interest shall be fixed by two arbitrators to be selected as provided in the lease, and, in the event of their disagreement, a third arbitrator shall be selected by them, and the decision of the majority of the three arbitrators shall be binding upon the parties. The city obligated itself to defend, at its own cost, any proceeding to recover the possession of the land, or any part of it, by title superior to that of the city, and the use of the property by the lessee shall always be subject to the right of the board and of the city to use the property at any time as a wharf, basin, or landing, and that whenever the board or the city shall determine to use the property, or any part of it, for a wharf, basin, or landing, the railroad company shall immediately surrender possession of such part as shall be demanded by the board of the city, and, if a part of the land shall be recovered from the railroad by a title superior to the city's, or surrendered by the railroad company on demand of the city or board for the use as a wharf, basin, or landing, the railroad company shall have the right to terminate the lease on the giving to the board in writing notice of its election so to do, within ninety days after such recovery or a surrender of the possession. It is provided in the lease that it ''shall be construed to grant a use of said property so far only as said board had the right and power to grant it, that neither the board nor the city shall be liable for the inability of the board to keep the railroad in possession.'' It was stipulated in the lease that the railroad company shall pay all state and county taxes on the lots during the term of the lease, with the right to

remove from them all improvements placed thereon by it at the expiration, or upon the termination, of the lease, for any cause. It is not required of us to set out herein further provisions of the lease to determine and dispose of the question presented.

Section 4078a, Ky. Statutes, requires railroad companies, including those here involved, annually, to make and deliver to the auditor of public accounts, the tax commission, and the railroad commission, between the 31st day of December and the 31st day of March following, a report stating among other things, the amount and kind of tangible property owned by them, and where situated, assessed or liable to assessment, and the fair cash value thereof, estimated at the price it will bring at a fair voluntary sale, and such other facts as the auditor may require. The report is required to cover a period of twelve months ending the 31st day of December next before its making. The railroad companies complied with the provisions of this and the preceding sections of the statutes. The report filed as an exhibit to the petition describes by metes and bounds the two lots as hereinbefore described. Following the boundary of one was this notation: "Exempt from city taxes." Following the boundary of the other it was noted: "Leased from city of Louisville. Exempt from city taxes." Lot No. 1 was valued and reported for taxation at $70,600, No. 2 at $5,040, totaling $75,640. At the foot of the statement showing the itemization and valuations of the properties reported was this notation: "List exempt from city taxes on property leased from the city." The total valuations of the lots as reported for state and county purposes were $75,640. The state tax commission raised the valuations 25 per cent., or the $75,640 to the amount of $94,550, and accordingly certified to the city of Louisville the total amount of the tangible property of the railroad subject to taxation by the city, without deducting therefrom the $94,550. These actions were instituted to enjoin the city from collecting city tax on the $94,550, on the ground that it is the valuations of real estate owned in fee by the city, but listed for it in accordance with the provisions of the lease. Section 4024 requires the owner to list and pay the taxes on his or its real estate, or interest therein.

The circuit court sustained a general demurrer to

the petition on the ground that, the railroad company having a 99-year lease on the lots, it was equivalent for taxation purposes, to ownership in fee. The railroad company listed separately the improvements on the lots. The right of the city to collect the tax on the improvements is not involved. There is no provision in the lease obligating the railroad company to list and pay to the city its tax on the lots. Its obligation per the lease was to list and pay the state and county taxes, for the city, on the lots. The lease is silent as to the payment of tax on the lots to the city. In Com. v. City of Louisville, 47 S. W. 865, 20 Ky. Law Rep. 893, it was held that wharf property of the city of Louisville was liable for state and county taxes, when not used for governmental purposes. In Com. v. City of Louisville, 133 Ky. 845, 119 S. W. 161, this court declared that a ''public wharf'' of the city of Louisville was exempt from taxation for state and county purposes, without regard to whether it was actually used as a public wharf or leased to private business. This question is not presented, nor do we determine, whether the fee in the lots described in the petition is or is not that character of property held to be exempt from state and county taxes in Com. v. City of Louisville. A lease of real estate was held to be an interest in real property subject to taxation, within the meaning of section 172 of the Constitution of Kentucky, in Mattingly's Ex'r v. Brents, 155 Ky. 570, 159 S. W. 1157; Wolfe County v. Beckett, 127 Ky. 252, 105 S. W. 447, 32 Ky. Law Rep. 167, 17 L. R. A. (N. S.) 688; Raydure v. Board of Supervisors, 183 Ky. 84, 209 S. W. 19; Purcell v. City of Lexington, 186 Ky. 381, 216 S. W. 599, and Com. v. Elkhorn Piney Coal Mining Co., 241 Ky. 245, 43 S. W. (2d) 684, and cases cited. It is not necessary, nor are we required, to determine whether the lease herein of the lots to the railroad company is property subject to taxation within the rule stated in those cases, and section 172 of the Constitution. Nor is it essential to determine that the lease of the railroad company is that character of lease considered in the case of Purcell v. City of Lexington, or the other cases cited and relied upon by the city.

The city is insisting that the lease of the railroad company vests in it title equivalent to a fee, for taxation purposes, within the purview of the opinion of Purcell v. City of Lexington. The railroad companies

contend the contrary. It is unnecessary to determine which of these contentions is correct, if either, since it· is very clear from the allegations of the petition that it was the fee in the lots, and not the lease thereon, that was reported by the railroad company, and assessed by the state tax commission for the purpose of taxation, including the city tax. The intent and effect of the averments of the petition are to relieve the railroad company of the city tax on the real estate, itself, and not the valuation of the lease thereon. On a demurrer to a pleading this court is authorized to examine the exhibit, for the purpose of ascertaining and determining only whether it conflicts with, or contradicts, the allegations of the pleading. An examination of the exhibit to the petition shows that it contains the metes and bounds of the lots identical with those in the petition. The notations on the report which we have pointed out were made to identify the lots, and not for the purpose and with the intention of reporting the lease on the lots for taxation. Neither of the notations, nor the lease, was valued and assessed by the state tax commission. The valuations contained in the report of the lots, plus the 25 per cent. raise, are the same valuations described in the petition, and neither the petition nor the report alludes to the valuation of the lease. The exhibit is not susceptible to the construction that it is a report of the valuation of the lease for taxation and not the valuations of the lots.

Real estate producing a rental of $300 per annum, and a long-term lease for business purposes of the same property, binding the lessee to pay the rental thereon, are severable, and each is property for taxation purposes (see cases supra), and the listing and the payment of the taxes by the owner of the one will not relieve the owner of the other of the duty to list and pay the taxes assessable against the other. So far as the petition or the exhibit states or shows, the lease on the real estate is omitted property within the meaning of this term as it is used in sections 4120, 4124, and 4065, and therefore not involved in this action. Neither the question of the propriety nor the impropriety of the railroad company reporting the fee in the lots for assessment and taxation as its property, and thus causing their valuations to be deducted by the state tax commission, when determining the valuation of the franchise, and thereby reducing the assessment of the

franchise, nor the question of estoppel by reason thereof, is raised by the demurrer to the petition. We express no opinion as to either of these questions.

With these views of the petition and its averments, and the exhibit thereto, the valuations of the lots were included in the state tax commission's assessment, and certified to the city for the purpose of taxation. The petition states a cause of action on this theory. The demurrer was improperly sustained to it.

Judgment reversed for proceedings consistent with this opinion.

Whole court sitting.