**FAYETTE COUNTY BOARD OF SUPER-
VISORS et al., Appellants,**

**v.**

**Edward C. O'REAR, Appellee.**

Court of Appeals of Kentucky.

Dec. 17, 1954.

As Modified on Denial of Rehearing
March 11, 1955.

578

William S. Riley, Frankfort, William E. Scent, Asst. Atty. Gen., for appellants.

Allen Prewitt, Frankfort, for appellee.

CULLEN, Commissioner.

A 600-acre farm in Fayette County, owned by E. C. O'Rear, was assessed for taxation, by the county tax commissioner, at a value of $135,700. Mr. O'Rear appealed to the county board of supervisors, which upheld the assessment, and he then appealed from that board to the State Tax Commission, which also upheld the assessment. Mr. O'Rear then appealed from the State Tax Commission to the Fayette Circuit Court, which reduced the assessment to $105,000. The county tax commissioner, county board of supervisors, and State Department of Revenue have appealed from the circuit court to this Court.

The successive appeals all were taken pursuant to KRS 133.120.

The main questions on this appeal are (1) whether the fact that the farm was subject to a long-term lease should be taken into consideration in fixing the assessment against Mr. O'Rear, and (2) whether the assessment made by the county tax commissioner was void because he employed an improper method of assessment.

The farm was leased by Mr. O'Rear to one Salmon, in November 1945, for a ten-year term, with options in Mr. Salmon to renew for four successive ten-year periods. The lease called for a cash rental of approximately $10,000 per year.

The contention of Mr. O'Rear, which was upheld by the circuit court, was that the lease carved out such a substantial property interest in the farm as to result in there being two taxable estates in the farm, one being the leasehold and the other Mr. O'Rear's reversion and fee interest. Under this theory Mr. O'Rear would be taxable only for his interest in the farm.

Several real estate men testified that the market value of the farm, *subject to the outstanding lease,* was $105,000, and it was this amount that the circuit court adopted as the proper assessment value.

The appellant taxing authorities maintain that an agricultural leasehold interest of the character here involved has no value for tax purposes that is separate and apart from the value of the underlying freehold. They rely upon KRS 132.220(3), which provides that "real property or any interest therein shall be listed * * * by the owner of the first freehold estate therein, and it shall be assessed without reference to conflicting title."

An examination of previous decisions of this Court discloses that we have held a leasehold interest to constitute a separate taxable estate only in two classes of cases. One class involved 99-year leases by cities or charitable or religious organizations, where the leasehold interest for all practical purposes was the equivalent of a fee, and where the nominal fee interest retained by the lessor was exempt from taxation under the Constitution by reason of the public, charitable or religious character of the owner. See Purcell v. City of Lexington, 186 Ky. 381, 216 S.W. 599; Illinois Central Ry. Co. v. City of Louisville, 249 Ky. 219, 60 S.W.2d 603. The other class involved oil or gas leases, where in actuality there was a sale of the minerals, the removal of which would deplete the original value of the real estate. See Wolfe County v. Beckett, 127 Ky. 252, 105 S.W. 447, 17 L.R.A., N.S., 688; Raydure v. Estill County Bd. of Supervisors, 183 Ky. 84, 209 S.W. 19.

■ Practical administration of ad valorem tax laws requires that in ordinary circumstances one person be held responsible for the tax liability of each item of property, and we think legislative recognition of this fact may be found in KRS 132.220(3), which we interpret as meaning that real property interests are not only to be listed by, but also assessed in the name of, the owner of the first freehold estate. In extremely unusual circumstances, such as in the case of 99-year leases and oil or gas leases, justification has been found for treating the leasehold as a separate taxable estate. However, the theory in those cases has been that the leasehold actually had more of the aspects of complete beneficial ownership than of a mere right of use and occupancy.

■ In our opinion the lease of the O'Rear farm did not carve out such a separable estate as to make Mr. O'Rear liable only for the taxable value of his interest in the farm, and we think the circuit court erred in giving consideration to the lease.

■■ The real estate men, on the basis of whose testimony the court fixed the assessment at $105,000, gave this sum as the market value of the farm *subject to the lease*. There was no evidence offered on behalf of Mr. O'Rear to show that the fair market value of the farm *itself* was less than the assessment of $135,700 made by the county tax commissioner. Under these circumstances, the assessment by the tax commissioner must stand unless that assessment should be found invalid by reason of the method employed in making it. The burden was upon Mr. O'Rear to establish that the assessment was wrong. Board of Supervisors of City of Frankfort v. State National Bank, 300 Ky. 620, 189 S.W.2d 942.

The method of assessment employed by the county tax commissioner was to value the land and the improvements separately, and then total the separate values. The land was appraised by applying a system of unit values based upon such factors as mineral content of the soil, thickness of the soil, slope of the land and location in the county. The improvements were appraised on the basis of reproduction cost new, less depreciation.

It is Mr. O'Rear's contention that the method or procedure followed by the tax commissioner violates the "sole standard" fixed by Section 172 of the Constitution, which is "fair cash value, estimated at the price it would bring at a fair voluntary sale". In substance, the contention is that the methods employed in assessing must be designed to acquire information as to what the market value actually is, rather than to form an estimate of what the market value logically should be.

■■ It is our opinion that an assessment cannot be held invalid merely because of the method employed in making it, so long as the method is fairly designed for the purpose of reaching, and reasonably tends to reach, an approximation of the fair voluntary sale price. In Borders v. Cain, Ky., 252 S.W.2d 903, 905, we said:

"* * * We know of no law which restricts him (the assessor) to one specific method or limits him in his search for advice and counsel. Nor do we know of any law which gives the taxpayer the right to object to the method used so long as the assessment is fair and equitable."

We think the assessment here had sufficient prima facie validity to require it to be upheld in the absence of a showing by the taxpayer that the assessment exceeded the fair voluntary sale price.

Mr. O'Rear relies upon Rogers v. Pike County Bd. of Sup'rs, 288 Ky. 742, 157 S.W.2d 346, and Board of Sup'rs of City of Frankfort v. State Nat. Bank, 300 Ky. 620, 189 S.W.2d 942, as supporting his contention that an assessment is invalid unless based solely on evidence as to market value. In the Rogers case, the county board of supervisors had attempted to *raise* the assessment made by the tax commissioner, and it was held, under the statute, that the board could not raise the assessment in the absence of affirmative evidence tending to show that the fair cash value exceeded

the original assessment. The Rogers case is not authority for the proposition that an original assessment can be made only by taking evidence of market value. In the State National Bank case, the question was whether an assessment of bank stock based on book value could be upheld in the face of evidence of actual sales of the stock, which indicated a lower value. This Court held that the evidence of actual sales was sufficient to furnish a basis for determining fair market value, and to overcome the assessment based on book value. However, the Court recognized that book value may be used as the basis for an assessment in the absence of other substantial criteria. There was no question in the case of the assessment based upon book value being *void*; it was simply a question of this assessment being overcome by evidence introduced by the taxpayer.

A final contention of Mr. O'Rear, which was not ruled on by the court below, is that the assessment of his farm violated the uniformity clause of Section 171 of the Constitution, because the evidence showed that farm lands in the surrounding counties were assessed at only 32% of actual value, whereas the farm lands in Fayette County were assessed at 37% of actual value. No authorities are cited on this question.

It is a matter of public knowledge that during the past few years the state taxing authorities have been making a concerted effort to secure equalization of tax assessments among the various counties. Necessarily, in the process of carrying out such a tremendous undertaking, some temporary and minor inequalities will result. We think that an inequality between counties of only five percent (in relation to full value) cannot be considered fatal under the circumstances. See Ray v. Armstrong, 140 Ky. 800, 131 S.W. 1039, 1043, in which was said: "Equality and perfection in matters of taxation are unattainable."

This is not a case where one taxpayer's property has been assessed at full value, while other property throughout the state is uniformly being assessed at only a percentage of its value. See Louisville & N.

R. R. Co. v. Greene, 244 U.S. 522, 37 S.Ct. 683, 61 L.Ed. 1291; Eminence Distillery Co. v. Henry Co. Bd. of Sup'rs, 178 Ky. 811, 200 S.W. 347; Siler v. Board of Supervisors, 221 Ky. 100, 298 S.W. 189. There is equality within the confines of Fayette County, and a fair measure of equality with the surrounding counties.

The judgment is reversed, with directions to enter judgment upholding the original assessment.