CITY OF ST. MATTHEWS, a Municipal Corporation, Appellant,

v.

Frank H. STALLINGS et al., Appellees.

Court of Appeals of Kentucky.

Feb. 8, 1957.

—◆—

J. W. Jones, C. Maxwell Brown, Louisville, for appellant.

Leon Seidman, Louisville, for appellees.

CULLEN, Commissioner.

In a class suit by a number of taxpayers of the City of St. Matthews, the circuit court held invalid a tax levy by the city for the January 1–December 31 fiscal year of the city, and directed a refund of the taxes collected. The ground of invalidity was that the *assessment* upon which the levy was based was not made in accordance with the ordinance that provided for the assessment and levy. The city has appealed from the judgment, maintaining that the assessment was valid and proper. The taxpayers have cross-appealed, contending that the levy should have been held invalid for addtional reasons, i. e., that the city attempted to use an illegal assessment date, and did not follow the prescribed statutory procedure for assessment, equalization, levy and collection of city taxes.

The ordinance in question was adopted in November 1954. It levied a tax for the city's 1954 fiscal year (January 1–December ber 31), based upon an assessment directed to be made by the city assessor as of July 1, 1954. The taxes were made payable December 10, 1954, and declared delinquent if not paid by December 31, 1954. The city assessor prepared an assessment roll by copying the valuations from the *county tax commissioner's* equalized assessment lists based on the county tax assessment date of January 1, 1953. A few adjustments were made where there had been changes of ownership since January 1, 1953, and two or three valuations were changed. The city board of equalization met on December 6, 1954, and reviewed the assessments. The tax bills then were issued, payable December 10, 1954.

The circuit court held the assessment invalid because the city tax assessor had not made an independent, initial assessment as of July 1, 1954, but merely had copied the county assessment as of July 1, 1953. The court was of the opinion that no assessment as of July 1, 1954, actually had been made.

This Court is inclined to take a more liberal view as to the effect of the actions of the city tax assessor. The product of his actions was a list purporting to value the taxable property in the city as of July 1, 1954. This product is what the ordinance and the statutes required of him. Any invalidating feature must be found, therefore, in the *method* he employed in reaching his valuations.

It has been recognized by this Court that an assessor may receive advice and counsel on the valuation of property, Borders v. Cain, Ky., 252 S.W.2d 903; and may employ evaluation formulas, Fayette County Board of Supervisors v. O'Rear, Ky., 275 S.W.2d 577. As we view it, the St. Matthews tax assessor may be considered merely to have availed himself of a reasonably reliable source of information concerning the value of the property in the city. What he did can hardly be said to be more objectionable than the established and long-recognized practice of most assessors of using their own assess-

ment list of the previous year as the working base for the current year assessment. The assessment statutes do not require the assessor to physically view all property assessed, but on the contrary contain such directions as that the assessor "shall assess the property from the best of his information," KRS 92.490, or "from such other evidence as he may be able to obtain," KRS 132.450.

There is no assertion that the assessment valuations here involved are unfair, unequal or excessive. All taxpayers were afforded an opportunity to appear before the city board of equalization. So it appears that the assessment method that was employed achieved a reasonably satisfactory result.

In Fayette County Board of Supervisors v. O'Rear, Ky., 275 S.W.2d 577, at page 579, this Court said:

"It is our opinion that an assessment cannot be held invalid merely because of the method employed in making it, so long as the method is fairly designed for the purpose of reaching, and reasonably tends to reach, an approximation of the fair voluntary sale price. * * * "

To the same effect is Borders v. Cain, Ky., 252 S.W.2d 903.

We believe the assessment must be considered to have been validly made, and that the trial court erred in holding otherwise.

We now come to the question of whether the city could legally use the July 1, 1954, assessment date, and the question of whether the city could use the procedure for assessment, equalization, levy and collection provided by statute for cities of the sixth class, or was required to use that provided for cities of the fourth class. The latter question arises by virtue of the fact that the 1954 General Assembly transferred St. Matthews from the sixth class of cities to the fourth class, effective June 17, 1954.

Early in 1954, when it was still a sixth-class city, St. Matthews attempted to make a levy of taxes for its 1954 fiscal year based upon an assessment as of January 1, 1954. In City of St. Matthews v. Trueheart, Ky., 274 S.W.2d 52, it was held that the levy was void, because the city had no authority to use the January 1, 1954, assessment date. In the opinion in that case it was pointed out that where a city of the sixth class had a fiscal year coinciding with the calendar year, and did not adopt the county assessment as authorized by KRS 132.285, it was contemplated by the statutes that the assessment date for the city taxes would be the July 1 *preceding* the beginning of the fiscal year. (The statute, KRS 92.420, since has been amended to designate January 1 as the assessment date for sixth-class cities.)

The decision in the Trueheart case was handed down on October 29, 1954. Since that decision invalidated the previous attempted tax levy for 1954, the city was faced with the problem of making another levy. It was felt that the city could not proceed under the statutes relating to fourth-class cities (notwithstanding the transfer which had become effective on June 17, 1954), because most of the dates designated by statute for tax procedures in fourth-class cities already had passed. Accordingly, the city attempted to follow the statutory procedure for sixth-class cities. However, the city chose July 1, 1954, rather than July 1, 1953, as the assessment date. The appellee taxpayers maintain that the city had no authority to choose July 1, 1954, but under the decision in the Trueheart case was required to use July 1, 1953.

We think it is clear that under the statutes relating to sixth-class cities, in effect in 1954, which provided for equalization of assessments in December, the only *feasible* July 1 assessment date for a city having a fiscal year commencing January 1 would be the July 1 preceding the beginning of the fiscal year. This is for two reasons: First, because it is considered to

be better practice for a governmental unit not to fix its tax rate until after equalization of the assessment lists upon which the rate will be levied; and second, because the taxes cannot be collected until after the equalization process has been completed. It is apparent that if a city used as an assessment date the July 1 in the middle of its fiscal year, it could not make a properly calculated tax levy nor collect its taxes, until the very end of its fiscal year. This would mean that the city would be operating for an entire year in anticipation of taxes to be collected at the end of the year. We cannot believe that the legislature intended such a result.

Notwithstanding our belief that the legislature did not intend the selection by a sixth-class city of an assessment date in the middle of its fiscal year, followed by an equalization at the end of the year, we cannot say that the statutes are so positive in this regard as to preclude it being done under any circumstances. In one instance, some 50 years ago, it was permitted to be done. See Blades v. City of Falmouth, 124 Ky. 259, 98 S.W. 1017.

We think some consideration may be given to the difficult and exceptional situation in which St. Matthews found itself, as a result of having been changed to a fourth-class city in the middle of its fiscal year. Under the fourth-class city law, the assessment date is April 1, KRS 92.420, the equalization is done in May, KRS 92.510, and the taxes may be collected in July, KRS 92.590. Therefore, there is no practical objection to a fourth-class city, with a fiscal year beginning January 1, using the April 1 assessment date falling within its fiscal year, because the taxes upon that assessment may be collected during the middle of the fiscal year, as is the established practice with respect to *county* taxes.

Perhaps it would have been proper for St. Matthews to have used the fourth-class city tax procedures, for its 1954 fiscal year. There is no clear basis upon which to hold that the city should have used one set of procedures rather than the other.

█  It appears that the main objection of the complaining taxpayers is, as pointed out in City of St. Matthews v. Trueheart, Ky., 274 S.W.2d 52, that the property annexed to the city in December 1953 should not be subjected to taxes for 1954. Obviously, if the city had used the fourth-class city tax procedures, it could have taxed the annexed property, because it could have selected the April 1, 1954, assessment date. Since the question of which set of procedures should have been used is an open one; since there is some precedent for use of an assessment date falling within the taxable year, even for a sixth-class city; and since the city was faced with a practical transition problem in the face of which even the strict letter of the law might be required to yield a little, we are not inclined to hold that the City of St. Matthews, under the particular circumstances, could not validly use the July 1, 1954, assessment date, and the sixth-class city tax procedures.

This decision does not conflict with that in the Trueheart case. There the city attempted to select an assessment date for which there was no statutory authority or precedent. We continue to be of the opinion that the statutes contemplated that a July 1 assessment date should precede a January 1 fiscal year beginning date, for sixth-class cities, but we recognize that unusual circumstances might require a departure from the general intent, which in the final analysis was based upon practicalities.

The judgment is reversed on the direct appeal, with directions to enter a judgment in conformity with this opinon. On the cross-appeal the judgment is affirmed.