**Linda ROSE a/k/a Linda Webb, Appellant**

v.

**Jon ACKERSON, Administrator for the Estate of William Bale, and Sherry Graff, Appellees.**

No. 2010–CA–001094–MR.

Court of Appeals of Kentucky.

July 27, 2012.

Braxton Crenshaw and Joseph Andrew Rugg, Lexington, KY, for appellant.

Brent Thomas Ackerson, Louisville, KY, for appellees.

Before ACREE, Chief Judge; STUMBO, Judge; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge:

Linda Webb, appeals from the May 17, 2010, Jefferson Circuit Court findings of fact, conclusions of law, and order of final judgment. That judgment awarded the proceeds of an annuity, valued at $30,734.89, to Sherry Graff and Jon Ackerson on behalf of the estate of William Bale. We affirm.

Bale was the payee of an annuity. Ackerson served as Bale's attorney and attorney-in-fact under a power of attorney over his affairs from 2000 until Bale's death in 2008. He drafted Bale's will and also served as executor of his estate. On February 14, 2000, Bale executed a power of attorney designating Graff as his attorney-in-fact. Bale and Graff then entered into an oral agreement in which Graff agreed to utilize the proceeds of the annuity to meet Bale's living needs and then use any remainder of the annuity to pay the debts of Bale's estate upon his death. It was further agreed that should any funds remain, Graff would retain those funds for her own benefit. Bale discussed this agreement with Ackerson, designated Graff as the beneficiary of the annuity, and then placed the funds into a trust with Graff. This arrangement between Bale and Graff continued until the end of 2001, when Graff became engrossed in caring for several sick friends.

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

On January 28, 2002, Bale executed a new power of attorney designating Webb as his attorney-in-fact. According to Ackerson, Bale and Webb also entered into an agreement regarding the proceeds of the annuity. Per that agreement, Webb agreed to utilize the proceeds of the annuity to meet Bale's living needs and then use any remainder of the proceeds to pay any debts of Bale's estate upon his death. It was further agreed that should any funds remain after the settling of Bale's estate, that Webb was entitled to retain those funds for her own benefit. On July 26, 2002, Bale executed a beneficiary form and named Webb as the beneficiary of the annuity. Also on July 26, 2002, Bale forwarded a notarized document to Ackerson that expressed his desire that any remainder in the annuity and certificates of deposit be made part of his estate upon his death. In August of 2006, Webb moved to New York and was no longer available to assist Bale. At that time, Graff resumed her care of Bale and continued to care for him until his death on February 27, 2008.

Following Bale's death, Ackerson contacted the annuity company and identified himself as executor of Bale's estate. The annuity company refused to disclose the name of the beneficiary to Ackerson and instead contacted Webb to notify her of Bale's passing and to inform her that she was the last named beneficiary to the annuity. Webb then contacted Ackerson to inform him that she was the beneficiary of the annuity. Ackerson testified that Webb agreed that Bale had intended for the annuity funds to be used towards his estate's debts. Ackerson provided Webb with a power of attorney for her to sign, so the annuity funds could be released to Bale's estate. After failing to have the document signed, Webb ceased contact with Ackerson.

On July 25, 2008, Ackerson and Graff, acting on behalf of Bale's estate, filed a complaint against Webb and West American Insurance Company ("West American") in Jefferson Circuit Court. That complaint made the following allegations: that Webb had relinquished any right to the annuity proceeds when she failed to continue caring for Bale; that Webb had acknowledged and agreed that the proceeds should be transferred to Bale's estate; that Webb had failed to have the funds transferred to Bale's estate; and that West American had failed to change the beneficiary to the annuity in conformity with a change of beneficiary form executed by Bale. As relief, Ackerson and Graff sought to have any remaining proceeds from the annuity transferred to Bale's estate. An amended complaint was filed on August 5, 2008.

At trial, Webb denied that she had ever acknowledged that the annuity proceeds belonged to the estate and testified that she had never made such an agreement with Bale. She also maintained that Bale wanted the annuity paid to her, not his estate, and that he wanted her to be the beneficiary of his certificates of deposit as well. Webb testified that she received the power of attorney form from Ackerson, went to the annuity company to have it signed, but then changed her mind and contacted an attorney.

On May 17, 2010, the trial court issued its findings of fact, conclusions of law, and order of final judgment, in which it found that a constructive trust had been created between Bale and Webb, and that Webb had agreed to pay the debts of Bale's estate with the remaining annuity funds. The trial court further concluded that the failure of Webb to use the funds in this manner would be unconscionable and contrary to the clear intent of Bale, and would result in the unjust enrichment of Webb.

The estate was therefore awarded the full amount of the annuity. This appeal followed.

■ Webb's first argument on appeal is that the trial court abused its discretion when it failed to dismiss Ackerson and Graff's action for failure to state a claim and when it provided a claim for relief that was never pled or argued by Ackerson and Graff. More specifically, Webb asserts that the complaint failed to clearly state the grounds upon which they based their claim and that the trial court improperly provided the claim of unjust enrichment on behalf of Ackerson and Graff. We do not agree.

A trial court has abused its discretion when its decision is "arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Miller v. Eldridge,* 146 S.W.3d 909, 914 (Ky.2004). A pleading which sets forth a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief and ... a demand for judgment for the relief to which he deems himself entitled." Kentucky Rules of Civil Procedure (CR) 8.01. This Court has clarified that "[t]he true objective of a pleading stating a claim is to give the opposing party fair notice of its essential nature." *Cincinnati, Newport & Covington Transp. Co. v. Fischer,* 357 S.W.2d 870, 872 (Ky. 1962). The complaint and amended complaint at issue before us were sufficient to give Webb notice of their essential nature: to recover the annuity funds in order to pay the debts of Bale's estate. The purpose of CR 8.01 is to give notice and formulate issues without the requirement of detail. *Stewart v. Lawson,* 437 S.W.2d 733, 734 (Ky.1969). It was plainly alleged that Webb was asserting a claim for the annuity proceeds which she had acknowledged were to be used for the debts of the Bale estate. Accordingly, the trial court

did not abuse its discretion when it determined that the complaint was sufficient to state a cause of action.

■ Webb further asserts that the trial court abused its discretion when it determined that Webb would be unjustly enriched if she were to retain the annuity funds. Webb argues that such a determination was inappropriate because Ackerson and Graff never asserted a claim of unjust enrichment. The equitable doctrine of unjust enrichment "is applicable as a basis of restitution to prevent one person from keeping money or benefits belonging to another." *Haeberle v. St. Paul Fire and Marine Ins. Co.,* 769 S.W.2d 64, 67 (Ky.App.1989). A party's failure to assert the existence of unjust enrichment does not serve to make it nonexistent. As long as the trial court determines that the elements are present, it is not precluded from making the legal conclusion that unjust enrichment exists. Herein, the trial court imposed a constructive trust after determining that Webb acquired the annuity proceeds by fraudulent inducement. Given those conclusions, we find no abuse of discretion with the trial court's subsequent conclusion that retention of the funds would thus result in unjust enrichment.

■ Webb next argues that the trial court committed clear error when it determined that there was clear and convincing evidence that Webb had agreed to use the annuity funds to pay the estate's debts and that her failure to do so would render it unconscionable for her to retain the funds. Again, we disagree. We review a trial court's findings under the clearly erroneous standard. *Keeney v. Keeney,* 223 S.W.3d 843, 848 (Ky.App.2007). "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

A previous panel of this Court has so aptly described the composition of a constructive trust that we repeat it herein:

[w]hen legal title to property has been acquired or held under such circumstances that the holder of that legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. Constructive trusts are created by the courts in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. The fraud may occur in any form of unconscionable conduct; taking advantage of one's weaknesses or necessities, or in any way violating equity in good conscience. In fact, a court exercising its equitable power may impress a constructive trust upon one who obtains legal title, not only by fraud or by violation of confidence or of fiduciary relationship, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another. Similarly we have said that a constructive trust may be imposed where title is taken under circumstances of circumvention or imposition.

It is true, despite cases to the contrary ... that Kentucky courts have required the party seeking the imposition of a trust to establish a confidential relationship with the party upon whom the trust is to be imposed. Where it is deemed necessary, however, the existence of the relationship in any particular case is to be determined by the facts established. Furthermore, the tendency of the courts is to construe the term 'confidence' or 'confidential relationship' liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof.

*Keeney,* 223 S.W.3d at 849–50 (citations omitted).

■ The evidence required to establish a constructive trust must be clear and convincing. *Id.* at 850. Clear and convincing "does not mean, however, that it must be entirely free from contradictions" and we will therefore not disturb the trial court's findings "unless they are against the preponderance of the evidence." *Id.* Preponderance of evidence is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." *Black's Law Dictionary* 1182 (6th ed.1990).

■ As the fact-finder, the trial court is delegated the task of determining the credibility of the witnesses and the weight given to the evidence. *See Uninsured Employers' Fund v. Garland,* 805 S.W.2d 116, 118 (Ky.1991). In support of their assertion that a constructive trust existed, Ackerson and Graff provided the following evidence: testimony regarding a similar agreement between Graff and Bale; the July 25, 2002, letter to Ackerson, identifying Bale's desire that his estate be the beneficiary of the annuity; Bale's will, which evidenced his desire that the debts of his estate be paid; and testimony regarding Webb's alleged admission to Ackerson that the annuity funds were intended for the estate's debts. What the trial court found to be of most consequence, however, was Webb's testimony, which it found to be unreliable. The trial court stated:

[a]lthough Ms. Webb testified that she made no such statement to Mr. Ackerson and that she was unaware of and not a party to any such agreement, her actions subsequent to Mr. Bale's death, namely her going to the annuity company to sign the necessary forms to provide Mr. Ackerson with the annuity

funds, then leaving before doing so, contradicts this testimony.

Given the trial court's discretion in discerning the weight of evidence and the credibility of witnesses, we do not ascertain that its findings are against the preponderance of the evidence presented.

■ Webb next argues that the trial court committed a fundamental error when it allowed parole evidence to alter the terms of a contract, namely the beneficiary of the policy and the will. We do not agree, however, that the trial court's actions sought to alter the terms of the policy or the will. The trial court merely found the existence of an agreement between Webb and Bale that the funds would be used to pay the debts of Bale's estate. This finding did not alter the terms of the policy, but rather limited the actions of Webb after receipt of the funds. Webb remained the beneficiary and legal title holder of the funds, but by virtue of the constructive trust could not in good conscience retain the beneficial interest of those funds. *See Keeney,* 223 S.W.3d at 849–50. Furthermore, Bale's will instructs that his debts be paid from his estate. The trial court's imposition of a constructive trust has no bearing upon that directive and failed to otherwise alter the terms of the will.

■ Webb's final argument on appeal is that the trial court abused its discretion in failing to apply the doctrine of unclean hands. "The unclean hands doctrine is a rule of equity that forecloses relief to a party who has engaged in fraudulent, illegal, or unconscionable conduct." *Suter v. Mazyck,* 226 S.W.3d 837, 843 (Ky. App.2007). As a general rule, a party's failure to timely assert an affirmative defense waives that defense. *Bowling v. Kentucky Dept. of Corrections,* 301 S.W.3d 478, 485 (Ky.2009); CR 8.03. Webb's pleadings do not contain the defense of unclean hands, but rather she argues that the defense was "brought to the trial court's attention" in her post-trial proposed findings of fact and conclusions of law. Such post-trial submission is both untimely and inadequate, and therefore fails to preserve the issue for consideration by this Court.

For the foregoing reasons, the May 17, 2010, judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.