RENDERED:  DECEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0629-MR

PATRICK J. O'CONNELL                                                APPELLANT

v.
APPEAL FROM SHELBY CIRCUIT COURT
HONORABLE CHARLES R. HICKMAN, JUDGE
ACTION NO. 13-CI-00109

JONNA Z. BIANCO                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Patrick J. O'Connell, *pro se*, brings this appeal from Findings

of Fact, Conclusions of Law and Judgment entered on March 22, 2019, in the

Shelby Circuit Court, in favor of Jonna Z. Bianco upon completion of a bench trial.

## Background

In 2010, Bianco, a resident of Tennessee, entered into an oral

agreement with O'Connell whereby Bianco would provide cattle to O'Connell who

would raise and care for them in Kentucky until calves were born and weaned, after which they would be sold and Bianco and O'Connell would split the sales proceeds.  The parties did not reduce their agreement to writing.  Bianco delivered the cattle to O'Connell in Kentucky in 2010.

The relationship between Bianco and O'Connell deteriorated and, in March 2012, O'Connell filed what purported to be an agister's lien under Kentucky Revised Statutes (KRS) 376.400.[1]  O'Connell sent Bianco a letter

---

[1] Kentucky Revised Statutes (KRS) 376.400 provides in relevant part as follows:

(1) Any owner or keeper of a livery stable or other business providing for the care of animals, and a person feeding, grazing, or caring for any animal for compensation, shall, except as provided in subsection (2) of this section, have a lien for one (1) year upon the animal placed in the stable, kennel, or similar facility, or put out to be fed or grazed by the owner, for his or her reasonable charges for keeping, caring for, feeding, and grazing the animal. . . .

(2) Any person who has agreed to provide feed or care for an animal for compensation may, in lieu of the lien provided for in subsection (1) of this section, cause the animal to be sold if:

(a) The owner of the animal is at least forty-five (45) days in arrears on his or her payment for the care and feeding of the animal, and the animal is in the possession of the person or business providing for the care of the animal;

(b) The proposed sale is published in one (1) or more newspapers and qualified pursuant to KRS Chapter 424, with a publication area in the locale where the person providing care for the animal is located and the locale where the owner of the animal was last known to reside; and

(c) Written notice of the sale is sent by certified mail, return receipt requested, or registered mail, to the owner of the animal, addressed to such person at his or her last known address, and to all lien holders of record with the Kentucky Secretary of State and the local county clerk's office, at least ten (10) days before the sale is conducted.

informing her of the lien, but she did not respond. Soon after, at least some of the calves born while in the possession of O'Connell were stolen. O'Connell did not inform Bianco of the theft. More cattle were later stolen and, again, O'Connell did not inform Bianco of the theft. O'Connell ultimately sold some cows but did not share any of the sales proceeds with Bianco.

In March 2013, Bianco filed this action, *pro se*, in Shelby Circuit Court. While inartfully drafted, the complaint appears to assert a claim for breach of contract and conversion of Bianco's cattle by O'Connell. O'Connell filed an answer and counterclaim, but did not seek a more definite statement of the claims asserted by Bianco. The answer filed by O'Connell did not question the court's jurisdiction or assert the statute of frauds as a defense.[2] O'Connell's counterclaim against Bianco asserted a breach of contract.

The case slowly meandered its way to a two-day bench trial held in May 2018. On March 22, 2019, the court issued extensive findings of fact, conclusions of law and judgment. After noting that the parties did not agree on even "the most basic elements of their agreement" and had failed to provide "virtually any documentation," the court found the agister's lien was invalid and

---

[2] *See* KRS 371.010(7) ("No action shall be brought to charge any person . . . [u]pon any agreement that is not to be performed within one year from the making thereof . . . unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith[.]").

-3-

unenforceable because O'Connell had not complied with the requirements of KRS 376.400. Record (R.) at 787. Finding Bianco's testimony generally more credible than O'Connell, the court concluded that the parties had never agreed that O'Connell would be reimbursed for his expenses and that his "only compensation in the deal would be his 50% share of the proceeds upon the sale of the calves." R. at 789. The court concluded O'Connell breached the oral agreement and converted the cattle by selling them pursuant to an invalid lien. The court also agreed with Bianco's assertion that O'Connell was negligent in his duty to care for the cattle by selling "a large portion of the herd and failing to safeguard them which resulted in the 63 calves and a dozen cows being stolen in two separate thefts." R. at 790. The court ultimately awarded Bianco $103,200 (86 cows x $1,200 per cow) in damages. The court also awarded Bianco $25,000 in punitive damages.

On April 1, 2019, Bianco filed a timely motion to alter, amend or vacate under Kentucky Rule of Civil Procedure (CR) 59.05, asking the court to award her additional damages, including the value of the calves born after the cattle were delivered to O'Connell. On April 4, 2019 – thirteen days after the judgment was entered, O'Connell served his own CR 59.05 motion, which was untimely and not considered by the court.

Before the trial court ruled on Bianco's CR 59.05 motion, O'Connell filed this appeal. O'Connell then discharged his counsel and sought to disqualify

the trial judge. While that disqualification motion was pending before the Chief Justice, O'Connell continued to file documents raising new arguments, including that Bianco lacked standing and the court lacked jurisdiction.

In December 2019, the Chief Justice denied O'Connell's motion to disqualify the circuit court judge. O'Connell continued to file documents repeating his insistence that, among other things, the circuit court lacked jurisdiction. On February 12, 2020, the circuit court denied Bianco's CR 59.05 motion. O'Connell then filed an amended notice of appeal.[3]

### Procedural Irregularities and Deficient Appellant's Brief

Before addressing the arguments raised by O'Connell, this Court must first address the significant procedural irregularities below and serious deficiencies with O'Connell's brief. CR 59.05 provides that "[a] motion to alter or amend a judgment, or to vacate a judgment and enter a new one, shall be served not later than 10 days after entry of the final judgment." A timely CR 59.05 motion tolls the thirty-day period to file an appeal under CR 73.02(1)(e).

But O'Connell served his CR 59.05 motion thirteen days after the trial court's findings of fact, conclusions of law and judgment was entered. Therefore, his CR 59.05 motion was untimely. *See Commonwealth v. Steadman*, 411 S.W.3d

---

[3] Briefing and the resultant issuance of this Opinion were delayed significantly due to the appeal having to be stayed until the trial court ruled on Jonna Z. Bianco's Kentucky Rules of Civil Procedure (CR) 59.05 motion.

717, 726-27 (Ky. 2013). In fact, at a hearing on May 9, 2019, O'Connell's then-counsel admitted the CR 59.05 motion was untimely. In addition to being fatally tardy, O'Connell's CR 59.05 motion and his subsequent idiosyncratic post-judgment filings (many of which do not facially seek relief and do not fall under any accepted rules governing post-judgment filings) contain new arguments which should have been raised prior to the issuance of a final judgment. *See Ford v. Ford*, 578 S.W.3d 356, 365 (Ky. App. 2019) ("As the evidence was *available* to Paula and *could* have been presented to the trial court before it rendered the judgment at issue, it was not properly included as part of Paula's CR 59.05 motion.").

Accordingly, O'Connell's CR 59.05 motion and subsequent post-judgment filings did not present a proper basis for the trial court to re-examine, or amend, its judgment. Thus, the issues first raised in the post-judgment filings were not properly preserved for appellate review. Simply put, even *pro se* parties cannot wait until after the entry of a final judgment to raise non-jurisdictional arguments which could have been raised at or before trial. *See Ford*, 578 S.W.3d at 366 (declining to consider on appeal arguments first made via CR 59.05 motion); *Florman v. MEBCO Ltd. P'ship*, 207 S.W.3d 593, 607 (Ky. App. 2006) ("The scope of review is limited to the theory or theories upon which the case was tried. The Court of Appeals is one of review and is not to be approached as a second

opportunity to be heard as a trial court. An issue not timely raised before the circuit court cannot be considered as a new argument before this Court.") (internal quotation marks, citations, and footnote omitted).

In this case, O'Connell's post-judgment filings were even more problematic since he had already filed a notice of appeal before submitting most of them. "[I]t is the law in Kentucky that, with certain narrowly circumscribed exceptions, the circuit court is divested of jurisdiction over a case when a notice of appeal is filed[.]" *Young v. Richardson*, 267 S.W.3d 690, 695 (Ky. App. 2008). The situation here does not facially fall within those narrow exceptions. So, the untimely filings did not afford the circuit court a proper mechanism to issue any orders pertaining to the issues involved in this appeal – indeed, any such orders would have been nullities. *Id.* at 696. "It is axiomatic that two courts cannot exercise jurisdiction over the same issue at the same time." *Id.* at 697.

In short, the proper avenues to seek post-judgment relief are narrow and tightly circumscribed. Parties disappointed by a final judgment are not free to then submit untimely, haphazard filings raising a laundry list of grievances which they could have raised earlier. Instead, issues must be properly presented to the trial court at a proper time via a proper motion. Because O'Connell's post-judgment submissions were untimely and irregular, the non-jurisdictional issues first raised therein and in his brief are not proper grounds for appellate relief.

In addition, as concerns his brief, O'Connell's has failed to comply with the requirements of CR 76.12. First, his brief exceeds the 25-page limit imposed by CR 76.12(4)(b)(i). There are only 25 numbered pages in the brief, but the three-page statement of the case is numbered using Roman numerals such that the argument section which follows the statement of the case begins with Arabic numeral one. In other words, his brief is 28 substantive pages long.

Second, the three-page-long statement of the case section of O'Connell's brief contains no citations to the record, even though CR 76.12(4)(c)(iv) requires "ample references" to the record.[4] We have held that citations to the record must "permeate both the Statement of the Case and the Argument[.]" *Clark v. Workman*, 604 S.W.3d 616, 619 (Ky. App. 2020). Finally, O'Connell's brief contains numerous incorrect assertions as to how his arguments were preserved for review, as we will discuss throughout this Opinion.

We are cognizant that O'Connell is proceeding *pro se*. But "[a]ll of the rules for preparing a brief before this Court are contained in CR 76.12 or rules cited therein. Lack of a legal education is not an impediment to following these rules." *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). O'Connell's *pro se* status "does not exempt him from the rules. He is bound by the same rules of

---

[4] Similarly, Jonna Z. Bianco's two-page-long counterstatement of the case unfortunately contains no specific citations to the record, in plain contravention of CR 76.12(4)(d)(iii).

appellate procedure as his opposing counsel and any other party before this court." *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019).

CR 76.12(8)(a) provides that a brief may be stricken for failure to comply with any substantial requirement of CR 76.12. Similarly, CR 73.02(2)(a) provides that an appeal may be dismissed for failure to comply with appellate rules. *Ford v. Commonwealth*, 628 S.W.3d 147, 153-54 (Ky. 2021). We decline to strike O'Connell's brief or dismiss the appeal. Instead, we will take O'Connell's preservation citations at face value without independently scouring the over 1,100-page record or video footage of the two-day bench trial to determine if an issue was properly preserved elsewhere. Where the citations in O'Connell's brief do not show that the issue was actually or properly preserved below, we have declined to review the argument since O'Connell has not requested palpable error review. *See Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008).

### The Trial Court Had Subject Matter Jurisdiction and O'Connell Waived Any Lack of Particular Case Jurisdiction

O'Connell's first main argument is that the trial court lacked subject matter jurisdiction. The precise contours of O'Connell's meandering argument are difficult to discern, but we construe it as an assertion that the circuit court lacked jurisdiction because Bianco had a pending bankruptcy petition during some of the time this case was pending in circuit court.

We begin by noting that the parties have not provided a complete record of Bianco's bankruptcy petition in the record below. However, it appears undisputed that she had a pending Chapter 13 bankruptcy petition at the time she filed this action but that petition was dismissed in 2015, well before the trial in this case.

O'Connell states he preserved this jurisdictional allegation multiple times. But he cites only to one occurrence before trial, his motion for proof of ownership. However, that motion makes *no mention whatsoever* of bankruptcy or any lack of court jurisdiction.[5]

Were this a nonjurisdictional issue, that would foreclose further review. But precedent holds that "since subject matter jurisdiction concerns the very nature and origins of a court's power to do anything at all[,] it cannot be born of waiver, consent or estoppel[,] and may be raised at any time." *Hisle v. Lexington-Fayette Urban County Government*, 258 S.W.3d 422, 430-31 (Ky. App. 2008) (internal quotation marks and citations omitted). That rule is proper because

---

[5] In a later section of his brief, Patrick J. O'Connell mentions his December 2015 motion to return to status quo. That motion argues that Bianco's then-pending bankruptcy petition triggered the automatic stay, and "actions taken by the parties, or this court, since the automatic stay came into effect are voidable." R. at 320. However, it appears that Bianco's bankruptcy petition was soon thereafter dismissed so the trial court deemed moot O'Connell's motion to return to status quo. Under the facts of this case, since he did not raise the pending bankruptcy proceedings until they had nearly ended, O'Connell failed to afford the circuit court adequate time to address the automatic stay issue.

-10-

"a judgment entered by a court without subject matter jurisdiction is void." *Id.* at 430.

However, we construe O'Connell's brief to actually raise an argument that the trial court lacked particular case jurisdiction. As we have explained:

> Subject matter jurisdiction concerns the very nature of the court's creation under constitutional provisions. Particular case jurisdiction is a subset of subject matter jurisdiction in that a court that lacks subject-matter jurisdiction over an action will also always lack particular-case jurisdiction, [but] a court can have proper subject-matter jurisdiction over an action, but nonetheless lack particular case jurisdiction[.]

*Id.* at 429 (internal quotation marks and citations omitted). In other words, "'subject matter' does not mean 'this case,' but 'this kind of case.'" *Gordon v. NKC Hosps., Inc.*, 887 S.W.2d 360, 362 (Ky. 1994) (citing *Duncan v. O'Nan*, 451 S.W.2d 626 (Ky. 1970)).

The Shelby Circuit Court is a trial court of general jurisdiction possessing the authority to resolve the claims at issue (this kind of case). *See Hisle*, 258 S.W.3d at 432 (explaining the wide jurisdiction of Kentucky circuit courts). Thus, the trial court had subject matter jurisdiction over the claims here.

The gist of O'Connell's argument is really that the trial court did not have the ability to decide *this particular case* because all legal proceedings involving Bianco should have been automatically stayed during the pendency of her bankruptcy petition. But, unlike subject matter jurisdiction, particular case

jurisdiction is waived if not timely asserted.  *See Goodlett v. Brittain*, 544 S.W.3d 656, 660 (Ky. App. 2018).  A party waits too long by not raising particular case jurisdiction arguments.  *T.C. v. M.E.*, 603 S.W.3d 663, 682 (Ky. App. 2020) ("Particular case jurisdiction can be waived by a party who fails to object early enough in the proceedings.").  Consequently, O'Connell waited too long to assert his particular case jurisdiction argument(s).  The issue was waived.

### O'Connell Failed to Timely and Adequately Preserve His Statute of Frauds Argument

O'Connell argues at length that the parties' oral contract violates the statute of frauds.  He cites three times where he preserved the argument, but none of the three suffices.  First, he claims the issue was preserved when his wife (who originally was named as a defendant) filed a motion to be dismissed.  It is unclear how a motion made by O'Connell's wife alone preserves the issue for O'Connell but, regardless, the motion to dismiss contains *no* reference to the statute of frauds.

Second, O'Connell states the issue was preserved by "oral arguments at Motion Hour on February 22, 2018[.]"  Appellant's Brief at 8.  But O'Connell fails to cite to where, specifically, the statute of frauds was discussed at that hearing.  It is not this Court's job to review an entire hearing of indeterminate length to see if an issue was raised.  It was O'Connell's duty to provide a pinpoint citation to *exactly* where he raised the statute of frauds argument.  Nonetheless, our

review of the hearing record reflects that the issue was not raised before the trial court at this hearing.[6]

Finally, O'Connell argues the matter was preserved by his "Judicial Notice of Adjudicated Facts." Appellant's Brief at 8. That document is null as it was filed well after the trial and does not fall within the narrow range of cognizable post-trial motions.

Moreover, CR 8.03 lists the statute of frauds as an affirmative defense which must be specifically pled. O'Connell did not raise the statute of frauds in his answer, so he waived it – even if he belatedly tried to raise it later. *See Bowling v. Kentucky Dep't of Corr.*, 301 S.W.3d 478, 485 (Ky. 2009) ("failure to assert timely an affirmative defense waives that defense and precludes its consideration by the trial court and this Court."); *Rose v. Ackerson*, 374 S.W.3d 339, 345 (Ky. App. 2012) (holding that raising an affirmative defense via a "post-trial submission is both untimely and inadequate" to preserve it).

---

[6] We note that O'Connell's reply brief does not dispute Bianco's assertion in her brief that the statute of frauds was not addressed at the February 22, 2018, hearing. Like the trial court, we must question O'Connell's credibility when this type of misrepresentation is made to this Court.

**O'Connell Has Not Shown Where He Adequately Preserved
His Arguments Regarding the Trial Court's Findings of Fact**

O'Connell argues the trial court's findings of fact are not supported by the evidence. That section of his brief contains multiple sub-arguments but he has not shown where he adequately preserved any of them.

He first asserts he preserved the arguments in his CR 59.05 motion but, as previously discussed, that motion was an untimely nullity. Second, he asserts he preserved it in his response to Bianco's timely CR 59.05 motion, which was narrowly focused on her alleged entitlement to additional damages for calves. O'Connell's overly broad response could properly have addressed only the merits of the discrete issues raised in Bianco's CR 59.05 motion; it was not a fresh opportunity to raise new issues (especially since it was filed after expiration of the ten-day period for seeking CR 59.05 relief and after O'Connell had already filed his notice of appeal). More importantly, O'Connell has not cited this Court to any errors made by the trial court during the two-day bench trial, and how they were preserved. In sum, O'Connell has not shown that he preserved the many issues contained in this section of his brief.

As noted, this is an appeal from a bench trial. Accordingly, our standard of review is governed by CR 52.01. Under CR 52.01, the trial court is required to make specific findings of fact and state separately its conclusions of law relied upon to render the court's judgment. Further, those "[f]indings of fact,

shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. A trial court's decision is not clearly erroneous if it is supported by substantial evidence. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998). "Substantial evidence" is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable [people]." *Id.* Furthermore, parties have a right to have matters before trial courts "adjudicated from the evidence of record[.]" *Skinner v. Skinner*, 249 S.W.3d 196, 201 (Ky. App. 2008). While deferential to the lower court's factual findings, appellate review of legal determinations and conclusions of law from a bench trial is *de novo*. *Sawyers v. Beller*, 384 S.W.3d 107, 110 (Ky. 2012).

The court conducted a two-day trial and considered considerable evidence. Ultimately, the court had to weigh the credibility of the testimony of O'Connell versus that of Bianco. The trial court found Bianco to be more believable. As the finder of fact, the trial court had *extremely* broad discretion to determine witness credibility:

> Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses because judging the credibility of witnesses and weighing evidence are tasks within the *exclusive province of the trial court*.

-15-

*Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (internal quotation marks, footnotes, and citations omitted) (emphasis added).

Without getting into the minutiae of O'Connell's argument, the trial court had the discretion to give more credence to evidence favoring Bianco than evidence favoring O'Connell. Indeed, the trial court explicitly noted that its decision hinged on its credibility determinations. Based on the evidence, the trial court made extensive findings of fact. We conclude that the trial court's findings are supported by substantial evidence and not clearly erroneous. Those findings will not be disturbed on appeal. *See Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967) ("The trial court heard the evidence and saw the witnesses. It is in a better position than the appellate court to evaluate the situation. . . . When the evidence is conflicting, as here, we cannot and will not substitute our decision for the judgment of the chancellor.").

O'Connell also argues on appeal that the trial court erred by awarding Bianco damages for conversion, alleging her complaint did not raise such a claim. He similarly argues the award of punitive damages was improper. Again, in addition to his failure to show where either issue was properly preserved, he has not shown an entitlement to relief. Generally, "a judgment should grant whatever relief a party may be entitled to, provided, however, that it must have at least some discernible relationship to the controversies in issue or be consonant with what is

-16-

specifically pleaded and proved." *Nagle v. Wakefield's Adm'r*, 263 S.W.2d 127, 130 (Ky. 1953).

Bianco's *pro se* complaint was not artfully drafted. However, the complaint does set forth Bianco's understanding of the parties' agreement, the delivery of the cattle to O'Connell, O'Connell's alleged failure to respond to Bianco's requests for information and the general deterioration of the parties' relationship such that Bianco believed it was "clearly the intent of Defendant [O'Connell] to steal all of the cattle belonging to Plaintiff [Bianco][.]" R. at p. 6, ¶ 30 of Complaint. CR 8.01(1) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and CR 8.06 provides that "[a]ll pleadings shall be so construed as to do substantial justice." So, even a complaint "couched in general and conclusory terms" may be sufficient. *KentuckyOne Health, Inc. v. Reid*, 522 S.W.3d 193, 197 (Ky. 2017). Also, CR 8.06's "'liberal construction' rule," means a pleading will be "judged according to its substance rather than its label or form." *McCollum v. Garrett*, 880 S.W.2d 530, 533 (Ky. 1994).

Thus, we agree with Bianco that her complaint at least minimally alleges the elements of conversion.[7] Similarly, the complaint contains allegations

---

[7] As we have noted:

In Kentucky, a claim of conversion consists of the following elements:

of malice sufficient to support an award of punitive damages, given its assertions that O'Connell intentionally and maliciously deprived Bianco of her cattle and the proceeds from the sale thereof. The judgment thus has "at least some discernible relationship to the controversies in issue[.]" *See Nagle*, 263 S.W.2d at 130.

Moreover, O'Connell did not file a motion for a more definite statement under CR 12.05, nor has he shown where he objected at trial to presentation of evidence on any issues not encompassed by the complaint. That lack of objection is crucial because CR 15.02 provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." And

---

(1) the plaintiff had legal title to the converted property;

(2) the plaintiff had possession of the property or the right to possess it at the time of the conversion;

(3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;

(4) the defendant intended to interfere with the plaintiff's possession;

(5) the plaintiff made some demand for the property's return which the defendant refused;

(6) the defendant's act was the legal cause of the plaintiff's loss of the property; and

(7) the plaintiff suffered damage by the loss of the property.

*Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. App. 2014).

O'Connell should have known before trial that Bianco was asserting a claim for conversion and was seeking punitive damages as she explicitly said so in her pretrial memorandum (R. at 674, 676) and itemization of damages (R. at 660-61). We thus find no error in the trial court's award of damages.

## O'Connell Has Not Shown A Due Process Violation

Finally, O'Connell argues the trial court violated his right to due process when the court issued an *ex parte* order in July 2015 which permitted the authorities in Jefferson County to transfer cattle from O'Connell's custody to Bianco's. However, while there may have been some testimony at trial about these cattle, the due process issue was not otherwise raised at trial and thus has not been properly preserved for consideration in this appeal. And, the trial court noted that neither party referred to these cattle in their proposed findings tendered to the court after the trial. At the hearing on Bianco's motion to alter, amend or vacate, O'Connell raised the issue, but the court declined to extend any relief in its order entered February 12, 2020.[8]

Kentucky appellate courts "have long endorsed a rule that specific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal" because "[w]hen a trial court never has

---

[8] As previously noted, O'Connell untimely served a motion to alter, amend or vacate pursuant to CR 59.05, which was not considered by the trial court. The due process issue was raised in this motion, but was not considered by the court due to its untimeliness.

the opportunity to rule on a legal question presented to an appellate court, an appellant presents a different case to the appellate court than the one decided by the trial court." *Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 852 (Ky. 2016) (internal quotation marks, citations, and footnotes omitted). Again, the scope of our review "is limited to the theory or theories upon which the case was tried[,]" *Florman*, 207 S.W.3d at 607 (internal quotation marks and citation omitted), even for constitutional arguments. *See Sneed v. University of Louisville Hospital*, 600 S.W.3d 221, 228 (Ky. 2020) (declining to review an equal protection argument which was not preserved for appellate review). Because O'Connell has not shown where he preserved his due process argument, we decline to address it on the merits, nor is it a basis for reversal. *Jones v. Livesay*, 551 S.W.3d 47, 52-53 (Ky. App. 2018).

For the foregoing reasons, the Shelby Circuit Court's Findings of Fact, Conclusions of Law and Judgment entered March 22, 2019, is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Patrick J. O'Connell, *Pro Se*
Louisville, Kentucky

BRIEF FOR APPELLEE:

Preston Scott Cecil
Natalie Lile
Frankfort, Kentucky