### Morgan v. Wible et al.
### Morgan v. Moore et al.

February 2, 1951.

Chester D. Adams, Chancellor.

Fowler & Fowler, Earle Fowler for appellant.

Stoll, Keenon & Park for appellees.

JUDGE SIMS—Affirming.

These cases spring from a single real estate transaction, were heard together below and both will be disposed of here in this opinion.

On March 1, 1948, Fred G. Morgan, through J. P. Moore doing business as Moore & Moore Realty Company, made a written offer to buy a tourist home at 1517 Richmond Road in Lexington for $33,500 from Mrs.

Lydia Wible and Mrs. Wanda W. Swope. The sellers accepted the offer by so stating in a written endorsement thereon dated March 21, 1948. As evidence of good faith, Morgan deposited with Moore his check for $3,350 to be applied on the purchase price, or returned to him in the event the title proved not merchantable. Deed was to be made not later than May 15, 1948, at which time possession was to be given the purchaser.

Morgan owned and held a $50,000 note against some mining property in eastern Kentucky and he was to use the money he could borrow from a bank on the note, along with a lien against the property he was purchasing, to pay for the property, and the contract contained this provision: "This contract is conditioned on the bank handling a $50,000 note as security on this property. If the bank fails to handle the note, this contract becomes null and void."

Morgan did not go through with the deal and sued Moore to recover the $3,350 depositd with him. The sellers sued Morgan to enforce specific performance of the contract and tendered him a deed. Moore's answer and counterclaim asked to recover a commission of $1,155 from Morgan. The consolidated cases were referred to the master commissioner, who after hearing proof reported Morgan defaulted on his contract, and recommended that the sellers were entitled to specific performance of the contract. He further recommended that Moore's counterclaim for his commission be dismissed, since the sellers were to pay this commission. The chancellor overruled exceptions to the commissioner's report and entered judgment in conformity therewith.

Morgan's sole defense was that the bank refused to handle his $50,000 note, therefore under the terms of the contract he was released from purchasing the property.

The proof shows the parties met in the office of Mr. A. G. Mainous, President of the Citizens Bank & Trust Company in Lexington, some time in March 1948, the exact date not appearing in the record. Mr. Mainous agreed to handle the note for Morgan as additional security for a mortgage upon the property within a reasonable time after a lien for $4,776.76 held by the Metro-

politan Life Insurance Company was released. The next day after the parties were in the bank, or at least within a few days thereafter, the record not being clear on this point, Mr. L. T. Rankin, then a representative of the Metropolitan, received a telegram from his company that the lien would be released as soon as the debt was satisfied. Mrs. Swope, one of the owners, testified she was to pay the Metropolitan's debt out of the purchase money at the time the deal was closed, which fact was thoroughly understood by Morgan.

After the meeting at the bank and before the wire was received from the Metropolitan that it would release its lien, Morgan returned to his home in Hazard, Kentucky. Upon receiving the insurance company's wire, Moore called Morgan at Hazard over the telephone and told him the insurance company's lien debt could be paid and everything was ready to close the deal. He testified that Morgan replied he would be down that "week end. Anyway, it was in a very short time they would be down to close it." When Morgan did not show up, Moore wrote him and called him "two or three or four times," but Morgan did not come to Lexington to close the deal. At first he said it was "pretty hard" for him to get away, and finally said he was "having a little domestic difficulty" and could not conclude the purchase.

Morgan's testimony is that he was ready to consummate the purchase when they first met in the bank and Mainous agreed to handle the $50,000 note. But there was a lien on the property which could not be released that day, and as the trade was to be concluded immediately, he did not feel obligated to take the property later. Morgan admitted notifying his attorney he would pay $28,000 for the property, which is strongly conducive to the thought that Morgan's reason for not carrying out his trade was he had offered more money than he thought the property was worth at the time the deal was to be consummated.

There were some other liens upon the property besides that of the Metropolitan but they had all been released before the wire was received on March 15, 1948, saying its debt could be paid and its lien released. The testimony of J. R. Ledford, deputy county court clerk, shows an encumbrance filed by Dr. Rankin was released

on March 8th, and the mortgage of the First National Bank was released on March 11, 1948.

We agree with the master commissioner, "The failure of the parties to consummate the sale can be attributed to the default of Morgan and to no other cause." Appellant argues in his brief that the contract provided the deed was to be made not later than May 15th and as it was not tendered until July 8, 1948, it was not made during the life of the contract. But Morgan had notified Moore he would not go through with the trade, therefore it was not necessary for the sellers to tender him a deed until this suit was filed, and that they did. Blanton v. Ky. Distilleries & Warehouse Co., C. C., 120 F. 318, at page 348; Cheney v. Libby, 134 U. S. 68, 10 S. Ct. 498, 33 L. Ed. 818. Johnson v. Benjamin, 219 Ky. 169, 292 S. W. 801.

Appellant further argues this is not the character of action wherein the chancellor should decree specific performance. The rule is that the remedy of specific performance is a mutual one between the vendor and the vendee and it is well-settled that the vendor in a contract for the sale of land, when fully able, ready and willing to comply with his contract, may obtain a decree of specific performance of the contract in his own favor although the relief is a recovery of money. 49 Am. Jur. "Specific Performance," sec. 98, p. 110. The same text, sec. 109, p. 128, says that while specific performance may not be had if there is a lien on the property, yet if that lien is immediately removable by the application of the unpaid purchase money, in the absence of the contract indicating a contrary intention of the parties, specific performance will be decreed where the lien can be satisfied out of the purchase money. We have cases holding that the existence of a lien debt which can be satisfied out of the purchase price is not a defense to an action for specific performance. Bean v. Brown, 202 Ky. 215, 259 S. W. 47, and authorities therein cited. See Allen v. Riedling, 283 Ky. 90, 140 S. W. 2d 833, wherein a lien to be satisfied from the purchase price is distinguished from a lien to be taken care of by an indemnity bond.

While the remedy of specific performance is one which rests within the discretion of the chancellor, yet whenever the contract concerns real estate, is certain in its terms and is capable of being enforced without

hardship to either party, it is as much a matter of course for the chancellor to decree specific performance as for a court of law to award damages for its breach. 49 Am. Jur. "Specific Performance," sec. 92, p. 107; Mattingly's Ex'r v. Brents, 155 Ky. 570, 159 S. W. 1157.

The judgment is affirmed.