RENDERED:  FEBRUARY 23, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0229-MR

ROBERT A. JONES                                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE MITCHELL PERRY, JUDGE
ACTION NO. 21-CI-006582


TRIPLE SPRINGS, INC.                                               APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CALDWELL AND EASTON, JUDGES.

CALDWELL, JUDGE:  This is an appeal from a judgment denying specific

performance of a real estate sale contract.  We reverse and remand with directions

to order specific performance.

## FACTS

Appellee Triple Springs, Inc. ("Triple Springs") was the record owner

of an Oldham County farm.  Dr. Frederick Stutzenberger was the sole officer of

Triple Springs. He indisputably had authority to enter into contracts on behalf of Triple Springs.

In late July 2021, Dr. Stutzenberger signed a contract on Triple Springs' behalf for realtor Patrick Pollard ("Pollard") to act as the listing agent to sell the farm. Dr. Stutzenberger hoped for the preservation of historic structures on the farm (including an approximately two-hundred-year-old vacant house, brick slave quarters, and family cemeteries). Dr. Stutzenberger later testified he also told Pollard he did not want the land to be developed.

A few weeks after the listing contract was signed, Pollard advised Dr. Stutzenberger of an offer to buy the farm from Appellant Robert A. Jones ("Jones"), a developer. The written offer contained a provision – added by Jones – stating that Jones was a licensed real estate agent. The written offer also stated Jones' intent not to tear down or remodel the old house or to sell it to someone else who wanted to do so. Jones put down $50,000 in earnest money. His offer was to pay for the farm in cash – which would likely help Dr. Stutzenberger to achieve his goal of closing on the farm sale by the end of the calendar year.

The initial offer was not accepted. However, following a series of written negotiations, the parties ultimately signed a Vacant Land Contract.

The negotiations occurred from August 25 through September 16, 2021. Initial written negotiations reflected a condition that the farm must be

determined to be at least 250 to 255 acres based on a new survey to be paid for by Jones.[1]  However, there was no need for the new survey as the parties ultimately agreed on a price of $17,000 per acre with acreage based on a 1956 Phillip J. Hughes survey of the farm.  The acreage of the farm was 261.134 acres according to this 1956 survey.  Though not explicitly stated in written contract documents, $17,000 per acre multiplied by 261.134 acres would result in a total purchase price of $4,439,278.00 – about a million dollars over Jones' initial offer to pay a total purchase price of about $3.42 million for the farm.

Later, Dr. Stutzenberger refused to close on the Vacant Land Contract.  In late October of 2021, he accepted a contingent offer submitted by other individuals on a Residential Sales Contract form.  The contingent offer was to pay just over $4.76 million for the farm with some financing.  This contingent offer stated the prospective buyers intended "to maintain or improve existing structures and seek conservation status."  Dr. Stutzenberger later described the individuals who made the contingent offer as farm neighbors.  He believed they would establish a museum and preserve the historic structures.

---

[1] Some initial offers and counteroffers appeared to have expired before being rejected. Nonetheless, the trial court orally stated at trial that the expiration of these offers made little difference to the resolution of this case.  We agree, as ultimately Jones timely accepted the seller's latest counteroffer on September 16, 2021, and both parties signed this agreement.

Shortly thereafter, Jones filed an action against Triple Springs in Jefferson Circuit Court for specific performance on the Vacant Land Contract.[2] Dr. Stutzenberger initially filed a motion to dismiss the action on Triple Springs' behalf based on alternative dispute resolution provisions in the Vacant Land Contract. After the trial court denied the motion to dismiss, Dr. Stutzenberger filed an answer raising defenses including lack of meeting of the minds, undue influence, fraud, and/or unclean hands which would make enforcement of the contract inequitable. Jones argued that the answer was not timely filed and that affirmative defenses were therefore barred. The case proceeded to trial.

At trial, Dr. Stutzenberger testified that he became aware of troubling information about how realtor Pollard performed as a listing agent only after the Vacant Land Contract was signed. He stated neighboring landowners told him they were not aware the farm was for sale until they saw a Sale Pending sign on the farm in mid-to-late September 2021. Due to living hundreds of miles away, Dr. Stutzenberger asserts he was unaware of whether or how Pollard was marketing the property as listing agent. He assumed the farm had been promptly listed on the Multiple Listing Service ("MLS"), as required by the listing contract.

---

[2] The parties do not explicitly address why the action was filed in Jefferson Circuit Court rather than Oldham Circuit Court. Perhaps the action was filed in Jefferson Circuit Court because Triple Springs' registered agent for service of process was in Jefferson County. In any event, no allegations of improper venue were raised to the trial court or argued in the parties' appellate briefs, so any venue issues appear to be waived. *See* Rules of Civil Procedure ("CR") 12.08(1); *Jaggers v. Martin*, 490 S.W.2d 762, 763 (Ky. 1973).

Evidence was also presented that despite the signing of the listing contract with Pollard in late July 2021, the farm property did not appear on MLS listings until September 13, 2021. And as of that date, the listing indicated the property was "under contract" – despite the Vacant Land Contract not being signed until September 16, 2021. Evidence was also presented showing that no for sale sign had ever been placed on the property; instead, a sale pending sign was placed there on or about September 20, 2021. Also, evidence showed an advertisement in a local paper (the Oldham Era) did not run until the day after Jones made his first offer.

Dr. Stutzenberger asserted he told Pollard he did not want the property to be developed and that he wanted the historic structures preserved. But he believed that Pollard only marketed the property to developer Jones. Dr. Stutzenberger suspected Pollard engaged in a pocket bid arrangement with Jones and failed to advertise to others that the farm was for sale.

Pollard testified that he had called another developer about the farm, who was not interested. Pollard also testified he called a doctor, who went to see the farm and loved it, but did not think he would be able to properly rehabilitate the house to reside there.

Dr. Stutzenberger further presented evidence that Pollard failed to provide to him information about agency relationships and other information and

-5-

documents required by Kentucky law. He also argued that as Jones was a licensed real estate agent, Jones knew or should have known that Pollard had acted improperly or made misrepresentations to Dr. Stutzenberger.

Dr. Stutzenberger filed an ethics complaint against Pollard, which apparently has not yet been resolved. Jones points to Pollard's assertion that the delay in MLS listing was due to questions about the farm's acreage and Dr. Stutzenberger's refusing to pay for a survey – noting that Dr. Stutzenberger had also sent Pollard a United States Department of Agriculture ("USDA") map estimating the farm's acreage at about 289 acres. Dr. Stutzenberger denies there was ever any real dispute about the farm's acreage being consistent with the 1956 survey and points to the deed in which Triple Springs obtained ownership of the property, which states the acreage at about 260 acres.

In addition to denying any real dispute about acreage, Dr. Stutzenberger testified that he did not tell Pollard not to put up a for sale sign and assumed one would be put up. But Jones has pointed out that the listing contract authorizes, but does not require, putting up a for sale sign.

Jones contends that whether, or even if, Pollard acted improperly in his actions as asserted by Dr. Stutzenberger, Jones had no reason to know of such improper actions. Pollard had actual and apparent authority as agent to handle the deal and there is no reason not to enforce the deal in Jones' view.

-6-

At trial, Jones testified he had no reason to suspect that Pollard had acted improperly. Jones admitted having bought other farms in the area with Pollard as the listing agent on a few other occasions over several years. But he denied that he and Pollard were friends or had any sort of exclusive business arrangement. He also testified that he did not typically look at the MLS or at websites which drew from MLS information (such as Zillow) when considering whether to buy large parcels of property for development. Jones did not recall seeing a for sale sign when he went to see the farm, but he did not think anything about that. Jones said that he wrote the statement about his being an agent in the offer, since Pollard forgot to do so.

At the conclusion of the trial, the trial court judge discussed his perception of the case. The judge concluded that neither contract signed by Dr. Stutzenberger was enforceable, in terms of preserving historic structures, due to the lack of conservation easement. He commented that a conservation easement could affect the sales price. The judge also suggested that Jones would be better able to offer Dr. Stutzenberger a higher price and more conservation protection than the farm neighbors, who appeared to have less knowledge of real estate transactions.

The trial judge stated that, acting as a court of equity, it was not inclined to order specific performance because he thought the contract was unenforceable due to the general way events occurred. The judge orally found that

Jones was "almost blameless" – instead, he placed most of the blame on realtor Pollard. Yet he opined that, as a broker, perhaps Jones should have been aware of some "warning signs" that some things seemed amiss. But then stated his perception that Jones had "pretty doggone clean hands" – perhaps not "pristine" but "relatively clean" hands. So, the judge believed it appropriate for Jones to have a right of first refusal to be able to match the price and other terms of any future offers submitted.

Upon sharing these initial impressions with the parties, the trial judge acknowledged that he had not researched the law in depth and perhaps his opinion could change based on review of legal authority. He invited the parties to submit briefs and proposed findings of fact and conclusions of law and he expressed an intention to enter a written judgment quickly due to his impending retirement.

Both parties filed proposed findings of fact and conclusions of law. Jones also filed a proposed alternative order of specific performance and a written closing statement. Dr. Stutzenberger also filed a Post-Trial Statement of the Case with attached exhibits in addition to his Proposed Findings of Fact and Conclusions of Law.

Shortly before the trial judge's retirement, the court entered a written judgment denying specific performance but giving Jones a right of first refusal. The court did not explicitly adopt the findings of fact and conclusions of law of

either party in this written judgment. However, it found the defendant seller's arguments "more persuasive, more aligned with the evidence introduced, and more equitable" and stated it denied specific performance "for the reasons set out in Defendant's post-trial statement[.]" It found realtor Pollard's conduct "baffling and inexplicable" and placed most of the blame on Pollard rather than Jones. The trial court did grant Jones a right of first refusal over any "legitimate, arms-length" offer which would otherwise be accepted for the farm's sale.

The court also recommended that Dr. Stutzenberger take steps to achieve his historic preservation goals before selling the farm after anticipating "that there might never be a true meeting of the minds on how certain parts of the property should be, or have to be, preserved going forward (given the squishy language used in both of the contracts presented in this case)." (This was consistent with the trial judge's concerns, expressed orally at the end of trial, that statements about intent to preserve in the two contracts were not enforceable.) Lastly, the trial court stated: "This is a final and appealable ruling resolving the matters in dispute and there is no further reason for delay."

Jones filed timely CR 59 and CR 52 motions for the trial court to alter, amend or vacate the judgment and for clarification and further findings. Following further hearings, the trial court denied these motions. Jones then filed a timely appeal. Further facts will be set forth as necessary.

## ANALYSIS

### Standards of Review

We review a trial court's factual findings following a bench trial for clear error and its legal conclusions *de novo*. *Sawyers v. Beller*, 384 S.W.3d 107, 110 (Ky. 2012); *Patmon v. Hobbs*, 280 S.W.3d 589, 593 (Ky. App. 2009). But we review a trial court's equitable decision to deny or grant specific performance for abuse of discretion. *See West Ky. Coal Co. v. Nourse*, 320 S.W.2d 311, 314 (Ky. 1959) ("[S]pecific performance of a contract is not granted as a matter of right, but is always addressed to the reasonable discretion of the court, to be exercised according to the facts of each case.").

Jones argues that the trial court misapplied the law, especially agency principles, and that Jones is entitled to specific performance. Triple Springs disagrees. It asserts the trial court properly applied the law and did not abuse its discretion in denying the equitable remedy of specific performance as it effectively found that Jones' hands were not entirely clean and that the contract was unfair, unjust, or inequitable.

We reject Triple Springs' arguments as the trial court did not make any explicit findings in its written orders that the contract was unjust or that Jones' hands were unclean. "We remind the circuit court that it speaks only through written orders entered upon the official record." *Kindred Nursing Centers Ltd.*

-10-

*Partnership v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010). And even the trial

court's equivocal oral findings about Jones perhaps having not entirely clean hands

were not formally incorporated into its written order. Thus, there is effectively no

finding by the trial court of Jones' having unclean hands or even less than entirely

clean hands. *See id.* ("[A]ny findings of fact and conclusions of law made orally

by the circuit court at an evidentiary hearing cannot be considered by this Court on

appeal unless specifically incorporated into a written and properly entered order.").

Especially given the lack of explicit findings of unclean hands or an

unjust contract in the trial court's written orders, we are compelled to reverse the

trial court's denial of specific performance pursuant to binding precedent.

**Trial Court Made No Finding of Unclean Hands or Misconduct by Jones**

Based upon our review of the record and applicable law, we conclude

that the trial court overlooked[3] or misapplied applicable law despite Jones'

---

[3] The original trial judge retired shortly entering a written judgment. In its written order denying Jones' post-trial motions for CR 59 and CR 52 relief, the trial court (by a new judge) stated that it agreed with its original judgment, that Jones' displeasure was not enough to merit relief, and that despite complaints about the brevity of the original judgment, the original judgment adopted the seller Defendant's proposed findings as well as making findings of the court's own.

The trial court may not have been entirely correct in stating that the Defendant's proposed findings of fact were adopted in the original judgment, however. The trial court's original judgment did not explicitly adopt the proposed findings of fact and conclusions of law ("FOFCOL") of either party though it found the defendant's arguments more "persuasive" and "aligned with the evidence" and though it denied specific performance "for the reasons stated in the defendant's post-trial statement." (Record ("R."), p. 982). The defendant's post-trial statement was a separate document from the defendant's proposed FOFCOL. However, defense counsel suggested at a post-trial hearing that the trial court had effectively accepted the defendant's proposed FOFCOL in denying specific performance for the reasons stated in the

-11-

bringing such issues to its attention in his post-trial motions. We further conclude that the trial court abused its discretion in denying specific performance under these facts. *See Puritan Homes, Inc. v. Abell*, 432 S.W.2d 632, 638 (Ky. 1968) ("[T]he remedy of specific performance lies within the reasonable, but not arbitrary, discretion of the court . . . . Too broad a judicial discretion tends to dilute the rule of law in favor of rule by human whim.").

The trial court's written judgment found fault primarily with realtor Pollard, rather than with Jones. Its oral statements at the end of trial that Jones was "almost blameless" and that his hands were relatively clean if not "pristine" perhaps suggests it did not find Jones' hands to be "entirely clean." *See id.* (stating specific performance "will be decreed only if the plaintiff's hands are entirely

---

defendant's post-trial statement since the proposed FOFCOL were attached to the post-trial statement.

Despite the parties' extensive and well-researched briefing of the issues raised in post-trial briefs and motions before the trial court, the trial court did not explicitly engage in any written or oral analysis of agency law or similar issues in originally denying specific performance or in post-trial relief. Nonetheless, appellate issues were preserved by being raised to the trial court. And the trial court's original judgment at least indicates that it accepted the reasons for denying specific performance asserted in the defendant's post-trial statement – *i.e.*, Pollard's problematic performance as a listing agent and the argument that Jones, as a real estate agent himself, knew or should have known of misrepresentations or other improper conduct by Pollard.

Perhaps a good argument could be made for simply vacating the trial court's judgment and remanding to make more specific findings to permit proper appellate review. But we conclude that the trial court's basic reasoning is established based on the record before us, and we reject this reasoning for denying specific performance for the reasons stated in the body of this opinion.

-12-

clean") (citing *Nourse*, 320 S.W.2d at 311). Yet the trial court also orally stated that Jones did not actively do anything wrong, despite suggesting that perhaps Jones should have been more aware of warning signs as a broker.

Notwithstanding any oral suggestions that perhaps Jones' hands were not entirely clean, the trial court made no written finding of unclean hands or even not entirely clean hands on Jones' part in its original judgment or in its order denying CR 59.05 relief. And a court's written findings certainly prevail over any inconsistent oral statements. *Younger v. Evergreen Group, Inc.*, 363 S.W.3d 337, 340 (Ky. 2012).

Furthermore, even assuming *arguendo* that any affirmative defense based on unclean hands is not time-barred, the fact that the trial court orally found that Jones did not do anything actively wrong but perhaps should have been more aware of indications something was amiss is not enough to support a finding of Jones having unclean hands. *See Rose v. Ackerson*, 374 S.W.3d 339, 345 (Ky. App. 2012) ("The unclean hands doctrine is a rule of equity that forecloses relief to a party who has engaged in fraudulent, illegal, or unconscionable conduct.") (quoting *Suter v. Mazyck,* 226 S.W.3d 837, 843 (Ky. App. 2007)). There was no finding, explicit or implicit, of fraudulent, illegal, or unconscionable conduct.

Even if the trial court had effectively adopted the arguments raised in the defendant's post-trial statement, the defendant's proposed findings of fact and

conclusions of law did not include any clear statement that Jones had acted with unclean hands.

Instead, Dr. Stutzenberger argued in his post-trial statement that Jones knew or should have known that Pollard had failed to comply with his duties as a listing agent and that Pollard had mistreated Jones. He noted Jones' testimony that Jones noticed Pollard had initially failed to identify Jones as a broker in the offer and that Jones added a provision to correct this.

Dr. Stutzenberger asserted Jones failed to notice several other "red flags" and suggested Jones acted nefariously by not asking to see the listing contract, not noticing the lack of a for sale sign, not asking to see or reviewing any advertisements concerning the property for sale, and not attempting to review any MLS listings about the property. And he claimed Jones acted improperly by failing to bring Pollard's failings to Dr. Stutzenberger's attention and by not filing an ethics complaint against Pollard. But Dr. Stutzenberger did not cite any authority requiring a broker/buyer such as Jones to inquire into listing contracts, for sale signs, MLS listings, or advertisements about the property or to generally make sure that the seller's listing agent was complying with his/her duties.

In sum, Dr. Stutzenberger argued that buyer Jones failed to independently inquire whether Pollard had complied with all his duties as the seller's listing agent despite Jones' noticing the need to insert a provision about

Jones' being an agent into his offer and despite his not noticing a for sale sign. But Triple Springs cites no authority in its appellee brief requiring that Jones, as an agent and buyer, was legally required to make such independent inquiries that the seller's agent complied with all his duties as a listing agent; nor are we aware of any such authority to this effect. And again, the trial court did not explicitly find or conclude that Jones engaged in fraudulent, illegal, or unconscionable conduct. Perhaps Jones should have searched for MLS information or a for sale sign to protect himself as a buyer, but there is no authority suggesting that he as a buyer/agent owed a duty to the seller to take these actions.

While the trial court indicated that it found fault with realtor Pollard's actions and/or inactions, Pollard was not a party to the contract nor this case. Nor does Triple Springs cite any controlling authority which would require denying Jones specific performance on the parties' contract due to the seller's agent's failure to perform his duties as a listing agent. There was no specific finding of or direct evidence of Jones' knowing Pollard did anything wrong and there was no conclusion of law or citation of legal authority indicating Jones owed Dr. Stutzenberger additional duties beyond the duties of good faith and fair dealing implied in every contract. *See Farmers Bank and Tr. Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) ("Within every contract, there is an implied covenant of good faith and fair dealing, and

contracts impose on the parties thereto a duty to do everything necessary to carry them out.").

**Binding Precedent with Similar Facts Indicates that Denying Specific Performance of Clear Contractual Terms to Good-Faith Buyer Despite Any Misrepresentation to Seller by Seller's Agent is an Abuse of Discretion**

Under similar facts, where any fault appeared to lie with the seller's agent and there was no evidence of the buyer (also a real estate broker) knowing of any malfeasance by the seller's agent or acting improperly himself, the Kentucky court reversed a trial court's denial of specific performance. *Abell*, 432 S.W.2d at 637-38. The Kentucky court held the buyer was entitled to specific performance, despite the sellers' claims of lacking education and not desiring payments to be spread out for as long as the written contract clearly required since "as between two innocent parties the one who made the injury possible must bear the consequences . . . ." *Id*. at 637.

Furthermore, the parties here each ultimately agreed to determining acreage based on the 1956 Phillip J. Hughes survey and to a price of $17,000 per acre. The trial court made no explicit finding that the parties did not achieve a meeting of the minds to sell the farm at a particular price. Instead, it expressed concern that it may not be possible to reach a meeting of the minds on matters of conservation. The trial judge even orally stated it believed Jones would be better

prepared to both offer a good price for the farm and to preserve historic structures than the other individuals who submitted the alternate offer.

While historic preservation is certainly important, the trial court abused its discretion in denying specific performance under the facts here. The trial court made no finding of unclean hands or undue influence. It expressed no concern with Dr. Stutzenberger's competency despite age and illness. And despite any lack of prior experience selling real estate, Dr. Stutzenberger is indisputably a well-educated person with a PhD, unlike the uneducated sellers held to the bargain they made in *Abell*.

Like the buyer seeking specific performance in *Abell*, Jones is also a real estate broker. Similar to the Kentucky court's holding in *Abell*, the trial court found that fault lay with seller's agent Pollard rather than Jones, the buyer/broker with no direct knowledge of any wrongdoing by the seller's agent. And like the contract in *Abell*, the written contract between the parties set forth a total contract price (here based on price per acre multiplied by the acreage stated in the 1956 survey) and the terms of payment – all in cash in the instant case.

In *Abell*, the sellers may have perceived that their agent miscommunicated offer terms and/or what each individual seller had told him when presenting the offer to Mr. and Mrs. Abell individually. *See* 432 S.W.2d at 635-36. In contrast, Dr. Stutzenberger asserted his agent failed to comply with his

duties under the listing contract (no MLS listing, for sale sign, or advertising for at least several weeks) and with professional duties to provide information about agency relationships. He also alleged his agent told him that he would not get any other offers, thus pressuring him to accept the offer from developer Jones. So, the form of any misrepresentation or other misconduct by seller's agents was somewhat different in the two cases.

Nonetheless, despite any differences in the form of alleged improper conduct by seller's agents, the *Abell* case indicates that where the buyer has not acted wrongfully and is not directly aware of any misconduct by the seller's agent (even when the buyer is a broker), it is an abuse of discretion to deny specific performance based on the seller's simply not liking the terms agreed to in writing. Post-contract remorse by a seller is, by itself, insufficient to deny a good-faith buyer the ability to have the agreed-upon contract terms enforced.

We are bound to follow precedent from the Kentucky Supreme Court or its predecessor court. SCR[4] 1.030(8)(a). Thus, following *Abell*, we conclude the trial court's denial of specific performance under the facts here was arbitrary and an abuse of its discretion. *See* 432 S.W.2d at 638.

---

[4] Kentucky Rules of Supreme Court.

**Precedent Allowing for Denial of Specific Performance of Otherwise Enforceable Contract for Reasons of Equity is Distinguishable**

While perhaps there may be other situations in which a court might validly neither set aside a contract entirely nor grant specific performance as a matter of equity, authority cited by Triple Springs in support of denying specific performance under the facts here is distinguishable due to issues of dual agency not present here as well as other factors. *See, e.g.*, *Wolford v. Steele*, 27 Ky.L.Rptr. 88, 84 S.W. 327 (Ky. 1905) (not officially reported).[5]

Notably, *Wolford* concerned a clear lack of adequate consideration for the property as well as an uneducated seller duped by his agent nephew, who failed to disclose that he was acting as a dual agent. *See id*. at 328. No dual agency issues have been alleged here and the $4 million-plus negotiated purchase price for the farm hardly seems like inadequate consideration, notwithstanding the trial court's interjections of concern about whether Dr. Stutzenberger's desire for historic preservation could be accomplished without a conservation easement. (There also is no evidence suggesting the lack of such an easement or enforceable preservation provision in the sales contract stems from any malfeasance by the buyer, Jones.)

---

[5] As *Wolford* was not officially reported, perhaps there may be questions as to whether it is binding. *See* Kentucky Rules of Appellate Procedure ("RAP") 41(A). And we decline to address non-binding authority from other jurisdictions and unpublished authority cited by the parties.

**Trial Court Made no Finding of Injustice or Hardship to Justify Denying Specific Performance and Not Applying Agency Law Holding Principals Responsible for Agent's Conduct in Negotiating Sale**

Certainly, principals must often be held responsible for their agents' acts in negotiating a sale based on principles of actual or apparent authority, at least in terms of liability for money damages or recission of a contract for agents' misrepresentations to other parties. *See generally Isaacs v. Cox*, 431 S.W.2d 494 (Ky. 1968); *Liberty Nat. Bank & Tr. Co. v. Gruenberger*, 477 S.W.2d 503 (Ky. 1972). Specific performance is a unique equitable remedy to be applied somewhat differently than other remedies such as money damages or recission. But there was no legally valid reason to deny specific performance under the facts here.

Certainly, under other facts, there may be situations where a court may properly decline to order specific performance of a contract which it determines to be inequitable or unjust. *See Miller v. Prater*, 267 Ky. 11, 100 S.W.2d 842, 845 (1937) (contract must be reasonable and just to award specific performance). But the trial court never found that the terms of the Vacant Land Contract between the parties were inequitable or unjust. Nor does the record before us compel such a finding or conclusion of injustice in the contract terms.

Similarly, perhaps a court might properly decline specific performance if awarding specific performance would pose undue hardship to a party. But the trial court made no finding that specific performance of the Vacant

Land Contract would cause such undue hardship despite expressing concerns that historic preservation was not guaranteed in the Vacant Land Contract or in the Residential Sales Contract.[6]

Where (as here) a real estate contract's terms are clear and can be enforced without causing either party hardship, Kentucky precedent indicates it is just as appropriate to award specific performance as an equitable remedy as it is to award monetary damages as a legal remedy for a breach of contract. *See Morgan v. Wible*, 314 Ky. 564, 568-69, 236 S.W.2d 472, 474 (1951) ("While the remedy of specific performance is one which rests within the discretion of the chancellor, yet whenever the contract concerns real estate, is certain in its terms and is capable of being enforced without hardship to either party, it is as much a matter of course for the chancellor to decree specific performance as for a court of law to award damages for its breach."). Thus, without finding the terms of the Vacant Land Contract to be unjust or the effect of specific performance to cause hardship, the trial court abused its discretion in denying specific performance of the contract negotiated between the two parties here.

Further arguments raised in the parties' briefs which are not discussed

---

[6] As the trial court orally acknowledged, it was not tasked with determining whether the Residential Sales Contract was enforceable in this action. Instead, the sole question before it was whether to enforce the Vacant Land Contract by awarding specific performance.

in this Opinion have been determined to lack merit or relevancy to our deciding the issues on appeal.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment and remand for entry of an order for specific performance.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Donald L. Cox
Matthew P. Cox
Louisville, Kentucky

ORAL ARGUMENT
FOR APPELLANT:

Matthew P. Cox
Louisville, Kentucky

BRIEF FOR APPELLEE:

Mitchell J. Rhein
Niall A. Paul
Megan W. Mullins
Charleston, West Virginia

ORAL ARGUMENT
FOR APPELLEE:

Niall A. Paul
Charleston, West Virginia